Jones, J.
 

 It is conceded by tbe pleadings that the steel company had fully complied with the provisions of the Workmen’s Compensation Act. Such being true, the plaintiff below, under Section 1465-76, General Code, cannot sue his employer unless it had failed to comply with a lawful requirement or the injury had arisen from the willful act of such employer or of its officers or agents. It would be a work of supererogation in this case to define the terms “willful act” or “willful negligence,” as applied ordinarily in cases of negligence. Suffice it to say that this court has fully determined the quality of a willful act in such cases as this in
 
 Payne, Director General,
 
 v.
 
 Vance,
 
 103 Ohio St., 59, 133 N. E., 85.
 

 The last danse of Section 1465-76 provides as follows:
 

 “The term ‘willful act,’ as employed in this section, shall be construed to mean an act done knowingly and purposely, with the direct object of injuring another.”
 

 This definition of a “willful act” was carried into the Code by the amended act of February, 1914 (104 O. L., 194), and, as stated in
 
 Patten
 
 v.
 
 Aluminum Castings
 
 Co., 105 Ohio St., 1, 11, 136 N. E., 426, no doubt this definition was embodied in the act because of the number of suits that were being brought in the courts, based upon allega
 
 *348
 
 tions of willful conduct or upon gross negligence amounting to willful conduct. Under the definition of the term “willful act,” as now employed in that section, plaintiff is required to plead and prove that the act was “done knowingly and purposely with the direct object of injuring another.” The language employed is plain and unambiguous. Two requirements are necessary in order to sustain recovery: First, that the act be done knowingly and purposely; and, second, that it be done with the direct object of injuring another. In
 
 Holt
 
 v.
 
 State,
 
 107 Ohio St., 307, 140 N. E., 349, this court decided that the words “purposely” and “willfully” carried the meaning of designedly and knowingly. Some lexicographers extend the definition to the extent that the act must be done intentionally and with predetermination. As now employed in the quoted section the term “willful act” imports an act of will, of design, of conscious intention to inflict injury upon another, although that other may not be the person actually injured. Gross negligence merely, or wantoriness amounting to gross negligence, can no longer be termed a willful act under this provision of the Code, unless such negligence or wantonness is conjoined with a purpose and intention to inflict injury upon another.
 

 The Court of Appeals reversed the judgment of the trial court because there was no evidence offered on the part of the plaintiff below to show such willful act. In this conclusion we agree. The only evidence offered by the plaintiff on the trial was that the master mechanic had ordered the chief electrician to wire the door of a certain closet
 
 *349
 
 in which the company’s tools were kept. Evidence was also offered tending to show that this door was covered with sheet iron. Two or three feet to the right of the door there had been placed a switch by the electrician, from which about 200 volts of electric current were conveyed by wires connecting with the sheet iron nailed oh the door. This closet and switch were in the blacksmith shop; the switch being ordinarily in charge of the blacksmith, who, upon this occasion, had thrown the switch so as to connect the electricity with the sheet iron door at the time plaintiff was injured. There was no testimony upon the part of either party showing why this closet, in which the tools were kept, was wired. No intimation appears from the record that the master mechanic, the chief electrician, or even the blacksmith, had any intention or purpose to injure the plaintiff or any one else. It is remarkable that not a single question was asked of a witness, either for the plaintiff or the defense, disclosing the purpose for which the electrical connection had been made. Counsel for plaintiff below urge that having proved the installation of the electrical device, that it was so constructed as to cause probable injury to .another, and that one of the employes had turned the switch, they had established circumstances whereby a reasonable inference could be drawn that the act was a willful act, as defined by the Code, and that in such situation the duty was cast upon the defendant in the trial court to explain the purpose of such electrical device. This insistence overlooks the fact that, if such explanation were given, it would still be incumbent upon the
 
 *350
 
 plaintiff to prove that the act was consciously done for the purpose of injuring another. However, the duty of explanation was not cast upon the de fendant. It must he conceded that if the plaintiff had' not pleaded in his petition that the act was done knowingly and purposely with the direct object of injuring another, the petition would be demurrable. It is an elemental principle of law tha t whatever is necessary for plaintiff to plead in order to recover, he must also prove. The plaintiff in his petition did allege that what was done by the company, its officers and agents, was done knowingly and purposely, with the direct object of injuring plaintiff. This was a vital allegation which the plaintiff was required to plead and prove in order to constitute the act a willful one under the definition employed by the Legislature in Section 1465-76, General Code. Upon that feature of the case there is an entire failure of proof, and the Court of Appeals did not err in reversing the judgment in that respect.
 

 In its general charge the court eliminated the defenses of contributory negligence and fellow servant and withdrew both from the consideration of the jury. He stated at the time that the third defense was withdrawn and that the court had already disposed of the fourth. However, a search of the record fails to disclose that the defense of contributory negligence was withdrawn, or how the court disposed of that relating to the fellow-servant feature. At any rate he made no allusion thereto in his general charge. It is fair to presume that the trial court was of the opinion that the defense of fellow servant was not avail
 
 *351
 
 able to an employer who had complied with the Workmen’s Compensation Act because it considered that what is commonly known as the Norris Act (Sections 6242 and 6245-1, General Code) deprived the company of these defenses in the instant case. These sections of the Code were in existence prior to the adoption of Article II, Section 35, of the Constitution of 1912. ¡Section 35 explicitly empowers the Legislature to pass laws “taking away any or all rights of action or defenses from employes and employers.” It limits this right, however, by a proviso that no right of action shall be taken away when the injury arises from failure of the employer to comply with a lawful requirement. Having this constitutional authority, the' Legislature, pursuant to its provisions, enacted Section 1465-76, General Code, which,, after giving the injured party his option to sue for damages if the injury arose from a willful act or from failure to observe a lawful, require • ment, provided in express terms that in the actions authorized by that section “the defendant shall be entitled to plead the defense of contributory negligence and the defense of the fellow-servant rule.” The provisions of the Norris Act are still effective, but they do not apply to employers who have complied with the Workmen’s Compensation Act. The legislative purpose is further shown by the enactment of Section 1465-73, General Code, which deprives employers failing to comply with its provisions of the defense of contributory negligence, assumption of risk, and of the fellow-servant rule. These defenses were well-known common-law defenses, and it is obvious that under
 
 *352
 
 the provisions of the Constitution and of the legislative act the legislative purpose was to protect the employer who had complied with the Workmen’s Compensation Act, by giving him the benefit of these two defenses in case of suit, and to penalize the employer who had not complied therewith by depriving him of these defenses. If the provisions of the Norris Act were held to apply to the instant case, then the quoted clause from Section 1465-76, General Code, would be of doubtful value, for the full fruits of contributory negligence could not be obtained under the Workmen’s Compensation Act. Contributory negligence would not be a complete defense.
 

 We therefore hold that since it is conceded that the steel company had fully complied with the provisions of the Workmen’s Compensation Act both of these common-law defenses were available to the employer.
 

 It appears from the record that one Ray Fen-ton was master mechanic, and that he authorized Alec Morrison, the chief electrician, to wire the closet door. The evidence further tends to show that the injury was directly caused by the failure of the blacksmith to turn off the switch. William Gildersleeve, a witness for the plaintiff, testified that he and his brother Thomas were foremen in the rolling department. He testified further that the chief electrician’s department and theirs were under two different supervisions, as follows:
 

 “Q. This man Morrison, who was the chief electrician, had nothing to do with Tom, did he?
 

 A. No, sir.
 

 
 *353
 
 “Q. He could not tell Tom what to do or what not to do? A. Not in his department; no.
 

 “Q. And neither could Fenton, the master mechanic? A. Not in the operating.
 

 “Q. Not in the operating department? A. No.
 

 “Q. So that the master mechanic is one department in and of itself, and the electrician was another department in and of itself, and Tom was in a department in and of himself? A. The rolling department — yes, operating.” * * *
 

 “Q. Tom was not under the jurisdiction of either one of them? A. No, sir.
 

 “Q. Was there anybody over in Tom’s department? A. The manager.
 

 “Q. The manager of the plant? A. Of the plant.”
 

 It therefore appears from this testimony that the plaintiff foreman was not only in a different department from that in which Fenton and Morrison were employed, but that neither of the latter had any authority or control whatever over the plaintiff, and that all were engaged in the service of a common master. Sections 6242 and 6245-1, General Code, introduced in this state a rule of liability not theretofore existing. The latter section established the rule of comparative negligence; the former engrafted the principle making a superior employe in a separate branch or department the fellow servant of employes in any other branch or department.' Section 6242, General Code, is a limitation of the fellow-servant rule, whereas the provisions of the Compensation Act give the complying employer the entire benefit of the rule in apt terms. Section 6242 emasculates
 
 *354
 
 the rule affecting' employes in separate branches or departments, and, to that extent, denies to the employer the defense of the fellow-servant rule given him without limitation by Section 1465-76, General Code. Since these sections cannot apply to employers who have complied with the Workmen’s Compensation Act, the defendant below was entitled to plead and prove the common-law rule of fellow servant, as announced by this court in many eases, some of which are as follows:
 
 C.,
 
 C.
 
 & C. Bd. Co.
 
 v.
 
 Keary,
 
 3 Ohio St., 201;
 
 P., F. W. & C. Ry. Co.
 
 v.
 
 Lewis,
 
 33 Ohio St., 196, and
 
 Kelly Island Lime & Transport Co.
 
 v.
 
 Pachuta, Admx.,
 
 69 Ohio St., 462, 69 N. E., 988, 100 Am. St. Rep., 706.
 

 The defendant was also entitled to the fellow-servant defense, even if such superior employe was in a separate department, especially if such superior employe exercised no control or authority over the injured employe in another department.
 
 Whaalan
 
 v.
 
 Mad River & L. E. Rd. Co.,
 
 8 Ohio St., 249;
 
 P., F. W. & C. Ry. Co.
 
 v.
 
 Devinney,
 
 17 Ohio St., 197;
 
 Railroad Co.
 
 v.
 
 Margrat,
 
 51 Ohio St., 130, 37 N. E., 11. In the latter case this court held that an engineer on a locomotive on one train was in a separate branch or department from that of a brakeman on another train of the same company, and, in the course of the opinion, at page 141 of 51 Ohio St. (37 N. E., 11 [13]), Bradbury, J., said:
 

 “Neither had been clothed with authority over the other, therefore the relation of superior and
 
 *355
 
 subordinate between them had no existence in fact. In the absence of such relation, their common employer would not be liable to either for injuries received through the negligence of the other, unless the rules of law upon the subject heretofore announced by this court have been abrogated.”
 

 The court held, however, that, although ordinarily no liability would attach because of the existence of the fellow-servant relation under the principles of the common law as announced by this court, the statute (section 3, 87 O. L. 150) had stepped in and abrogated the rule by expressly defining who should be considered fellow servants in the railroad service. Since then Section 1465-76, General Code, has been adopted, restoring this defense to employers therein named.
 

 It is insisted, however, that either Fenton, or Morrison, or both, should be considered as “agents” of the company, and therefore liable under the provisions of Section 1465-76, General Code, for the reason that that section authorizes suit in case such injury has arisen from the willful act of such employer or “any of such employer’s officers or agents.” No claim is made that the act was committed by any officer of the defendant, but it is argued that a right of action has been given the plaintiff because the injury in question arose from the willful act of an
 
 agent
 
 of the employer. Manifestly this argument falls of its own weight, if the employe who committed the injury is a fellow servant, for the reason that the statute expressly gives the employer that de-.
 
 *356
 
 fense. Who then should be considered as the agent of the company, for whose willful act it should be held liable? As employed in this section of the act the term should not be given that restricted meaning usually adopted in defining the relations of principal and agent. Since the statute has excluded all fellow servants from its operation, the natural construction would be that the word “agent” applies, in cases of this character, only to those who are superior to the injured workman and who exercised power or control over him. To that extent the common-law rule of liability attaches under the Workmen’s Compensation Act, as it did before. Even so, the act complained of must be within the scope of employment. If the willful act was committed by an employee who was at the time acting within the scope of his employment, and who was superior to and had authority or control over the injured plaintiff, and was done knowingly and purposely, with the direct object of injuring another, and the injury was suffered in the course of employment, liability would attach, and the fellow-servant defense would not apply.
 

 The journal entry of the Court of Appeals discloses that it held that the common pleas court erred in refusing to direct a verdict in favor of the defendant below at its request, for the reason that there was no evidence offered tending to show a willful act. A minority of this court are of opinion that it became its duty under that holding, and likewise the duty of this court, to render judgment in favor of the defendant in error in
 
 *357
 
 stead of remanding the case to the court of common pleas for further proceedings. A motion for a directed verdict had been made at the close of the entire evidence offered. In view of the fact that the Court of Appeals did not render final judgment, hut remanded the case for further proceedings, the majority are unwilling to render final judgment herein, but are content to affirm the judgment remanding the cause.
 

 Judgment affirmed.
 

 Marshall, C. J., Robinson, Matthias and Day, JJ., concur.