[Civil No. 4645. Filed July 15, 1943.]

[140 Pac. (2d) 219]

# THE INDUSTRIAL COMMISSION OF ARIZONA, Plaintiff, v. ANA FROHMILLER, as Auditor of the State of Arizona, Defendant.

Mr. H. S. McCluskey and Mr. Fred O. Wilson, for Plaintiff.

Mr. Joe Conway, Attorney General, and Mr. Earl Anderson, Chief Assistant Attorney General, for Defendant.

Mr. Geo. T. Wilson and Messrs. Minne & Sorenson, *Amici Curiae.*

McALISTER, C. J.—The Sixteenth Legislature on March 6, 1943, enacted chapter 26, known as the "Arizona Occupational Disease Disability Law," and placed upon the plaintiff the duty of putting it into effect and enforcing it. In doing this the commission rented and received a typewriter from Walsh Bros., of Phoenix, Arizona, for an agreed consideration of $4 per month beginning May 3, 1943. In order to pay the rental therefor, plaintiff filed with defendant for audit and payment, on May 19, 1943, the original claim of Walsh Bros., duly verified and approved by it against the appropriation of $7,500, made to the Industrial Commission in section 62 of chapter 26, and on the 8th day of June, 1943, the auditor, acting upon the theory that all uncertain claims should be first passed upon by the court, rejected it upon the ground that the effective date of the act was uncertain and for the further reason that the attorney general advised that some provisions of the act may be in conflict with the Constitution. Section 64 makes the effective date July 1, 1943, and the act itself carries the emergency clause and was passed and signed by the governor on March 6, 1943. On June 9, 1943, this court, upon petition of the Industrial Commission, issued an alternative writ of *mandamus* commanding the auditor to draw her warrant in payment of the claim, or to show cause why she had not done so.

In reply to the writ the defendant takes the position that section 8, article 18, of the Constitution of the state does not authorize the enactment of the "Arizona Occupational Disease Disability Law" because it directs the legislature to enact a Workmen's Compensation Law by which compensation shall be paid to any workman, or his dependents, if injury or death, "from any accident arising out of, *and* in the course of," such employment is caused by the risk or danger of such employment; whereas section 3, of chapter

26, contemplates that compensation will be paid on account of industrial diseases "arising out of *or* in the course of" his employment, these expressions being dissimilar in meaning. Section 13, of the act imposes liability upon the employer for payment of compensation to an employee only for an occupational disease "arising out of his employment" and section 35 reads:

"Sec. 35. *Occupational Diseases—Proximate Causation*. The occupational diseases hereinafter defined shall be deemed to arise out of the employment, only if there is a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment, and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not have been foreseen or expected but after its contraction must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a natural consequence."

In the light of this section, it is obvious that chapter 26 was not designed to compensate for diseases which arise as the result of an accident, but in order to be compensable the disease "must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a natural consequence." A constitutional provision "directing the Legislature to enact particular legislation necessarily carries with it no authority to enact something not included therein." *Home Accident Ins. Co. v. Industrial Commission*, 34 Ariz. 201, 269 Pac. 501, 503. The plaintiff does not claim, how-

ever, that section 8, article 18, of the Constitution, authorizes the passage of the Arizona Occupational Disease Disability Law, but merely that it does not prohibit the enactment of it by the legislature in the exercise of its police power. So it is conceded that the legislature could not look to section 8, article 18, for authority to enact the occupational disease law.

The defendant contends further that the Arizona Occupational Disease Disability Law, as enacted, abrogates the right of action for, and limits the amount of, damages for injuries, in contravention of section 31, article 2, and section 6, article 18, of the state Constitution. These provisions read as follows:

Section 31, Article 2: "No law shall be enacted in this state limiting the amount of damages to be recovered for causing the death or injury of any person."

Section 6, Article 18: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

If the right to recover damages or compensation under the common law for injury caused by occupational disease existed at the time these constitutional provisions were adopted, this contention of defendant would have some force. But it is our view that no right of action solely for occupational disease existed at common law, though perhaps it was incidental to some other acts of negligence, and that no constitutional or statutory provision allowed recovery for such a disability, and hence that the option given by section 60 merely preserves the right of action, provided one exists. It is true that some of the states have held that an occupational disease falls within the common law liability of an employer who is guilty of negligence, but when the Constitution of this state was adopted occupational diseases had

neither a common law history nor statutory origin. In *McCreery* v. *Libby-Owens-Ford Glass Company,* 363 Ill. 321, 2 N. E. (2d) 290, 293, 105 A. L. R. 75, the court said:

"As we pointed out in the Boshuizen case, *supra* [*Boshuizen* v. *Thompson & Taylor Co.*] 360 Ill. 160, 195 N. E. 625], the matter of occupational diseases has neither common-law history nor origin. We should add that those diseases were likewise unknown to medical science during the formative period of our common law."

The Workmen's Compensation Law of Arizona is based in the main upon that of Utah, *Pierce* v. *Phelps Dodge Corp.,* 42 Ariz. 436, 26 Pac. (2d) 1017, and the Supreme Court of Utah has said that the Workmen's Compensation Law of that state was largely based upon that of Ohio. *Heiselt Construction Co.* v. *Industrial Commission,* 58 Utah 59, 197 Pac. 589, 15 A. L. R. 799. Hence, the rule in Ohio is at least persuasive here, and in *Industrial Commission* v. *Monroe,* 111 Ohio St. 812, 146 N. E. 213, the Supreme Court of that state said, "At common law there was no liability for damages for occupational diseases," and in *Ewers* v. *Buckeye Clay Pot Co.,* 29 Ohio App. 396, 163 N. E. 577, that court refused recovery for a disease known as "potter's consumption." The English courts are to the same effect. *Williams* v. *Guest et al.,* 18 B. W. C. C. 535–Ca. The federal courts take this view also. In *Grammer* v. *Mid-Continent Petroleum Corporation,* the Circuit Court of Appeals of the Tenth Circuit said:

"Occupational diseases are a part of the hazards of industry. The loss therefrom, like the loss from accidental injury, ought to be borne by the industry in the first instance, and not by the employee. But it is the function of the legislative arm, and not the judicial, to extend the workmen's compensation laws to cover them. Tested by the principle of fault which underlies recovery for injuries at common law, we do

not believe the appellant has established her case." 71 Fed. (2d) 38, 45.

The Supreme Court of the United States showed approval of this view by denying *certiorari*. 293 U. S. 571, 55 Sup. Ct. 82, 79 L. Ed. 670.

█ So far as our reports disclose no case has ever come to this court asking for damages solely upon the ground of occupational disease, though many could and doubtless would have been brought had occupational disease alone been recognized as furnishing a basis for action. And besides, if such a right had existed at common law when the Constitution was adopted, the members of that body undoubtedly would have directed the legislature to enact suitable legislation regarding it as they did in the case of personal injuries from accidents arising out of and in the course of employment. But it was only when the passage of chapter 26 came about that provision for taking care of those workers who were unfortunate enough to have become affected with an occupational disease was made. There had never existed any reason why they should not have been protected against such a hazard as are those workers accidentally injured in industry, for a disease brought about by one's occupation is just as truly the fault of industry as the accidental loss of an arm or a leg. Certainly the legislature in the exercise of its police power has the right to enact such legislation.

█ Again, it is suggested by the defendant that even if it were possible to elect to reject the common law action for damages for negligence prior to its accrual and thus circumvent these two provisions of the Constitution, it is necessary that such election be voluntary and freely made, and this is not true under the act as passed. This contention has no application in view of the fact that an election between compensation and the common law action of negligence is an

election between compensation and no other remedy, since there was no common law right of action for occupational disease, the first recognition of the right to relief therefrom being that created by the enactment of chapter 26 of the laws of 1943.

■ The defendant contends also that if an employee desires to accept the benefits of the act and deprive himself of the common law action for negligence, he is, nevertheless, precluded from so doing by section 3, of article 18, of the Constitution, reading as follows:

"§ 3. It shall be unlawful for any person, company, association, or corporation to require of its servants or employees as a condition of their employment, or otherwise, any contract or agreement whereby such person, company, association, or corporation shall be released or discharged from liability or responsibility on account of personal injuries which may be received by such servants or employees while in the service or employment of such person, company, association, or corporation, by reason of the negligence of such person, company, association, corporation, or the agents or employees thereof; and any such contract or agreement if made, shall be null and void."

This proposition, as suggested by the brief of *amici curiae*, invalidates any contract which an employer may "require of its servants or employees as a condition of their employment, or otherwise," releasing an employer from liability on account of personal injuries received by the employee during his employment as a result of the negligence of the employer. It is only contracts which require the employee, as a condition of employment, or otherwise, that are invalidated. A contract required by the employer is one which is "demanded" or made "obligatory" by him, but an employee's election to accept the benefits of the Occupational Disease Disability Law and waive any common law action he might have is in no

sense a contract which is demanded or made obligatory by the employer, but merely the exercise of the free and voluntary option provided by the statute. This constitutional provision was adopted to prevent an employer from depriving his employee of his right to recover for injuries sustained through the employer's negligence, not to prevent an employee from availing himself of an alternative remedy granted him by the statute.

■ The defendant further contends that section 11 of the act provides for the inclusion of minors as "illegally permitted to work for hire," in that it says that "Every person in the service of any employer subject to this act as defined in the preceding section, or to whom such employer is required to secure compensation under this act, including aliens and minors legally or *illegally permitted to work for hire,"* is an employee, workman, or operative within the meaning of the act. The inclusion of this provision is, it is claimed, in violation of section 2, of article 18, of the Constitution, reading as follows:

"§ 2. No child under the age of fourteen years shall be employed in any gainful occupation at any time during the hours in which the public schools of the district in which the child resides are in session; nor shall any child under sixteen years of age be employed underground in mines, or in any occupation injurious to health or morals or hazardous to life or limb; nor in any occupation at night, or for more than eight hours in any day."

We think it unnecessary to discuss this proposition for the reason that we have no concrete case before us involving the question and it should be determined when that is the situation. We prefer not to anticipate that minors will be illegally permitted to work, but in case they are the matter can be disposed of when that occurs, and if it should be concluded then that

this provision of the Constitution stands in the way of their illegal employment, this part of the act is severable and could be eliminated without in any degree affecting any of its other provisions.

The defendant urges also that the act contravenes section 23, of article 2, of the Constitution, reading as follows:

"§ 23. The right of trial by jury shall remain inviolate, but provision may be made by law for a jury of a number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of a jury in civil cases where the consent of the parties interested is given thereto."

By section 60 of the act it is made optional with the employee to accept the provisions of the act, or retain the right to sue the employer (if such right exists), and an employee's election to reject the act is made by giving written notice to the employer within ten days from the date of his first employment, stating that he elects to reject the provisions for the payment of compensation by the Arizona Occupational Disease Disability Law. If he does not elect to reject compensation, he shall be conclusively presumed to have elected to take it and be subject to the act in accordance with its terms. In 71 C. J. 286, § 32, is found this language: "Under the voluntary or elective acts the parties by accepting the act are held to waive the right to a jury trial, hence there is no deprivation." In support of this text the author cites *Sexton* v. *Newark Dist. Tel. Co.,* 84 N. J. L. 85, 86 Atl. 451, 457, a case in which an attack was made upon section 2 of the Workmen's Compensation Act of that state, N. J. S. A. 34:15–7 *et seq.,* upon the ground that it violated article 1, section 7, of the New Jersey constitution, N. J. S. A., providing that: "The right of trial by jury shall remain inviolate." The court said:

" . . . This contention totally misconceives the proper construction and effect of the constitutional provision in question. The language, with respect to this mode of trial, is that it shall remain inviolate, not that it shall be unalterable. (citing cases) It is therefore a privilege which may be waived by either party and not an absolute right which is not the subject of such a waiver. The practice of waiving a trial by jury in civil cases or proceedings in this state is of such common occurrence as to attract no attention, and it has never been doubted in this state that such a waiver could be made. Thus it is stated by Mr. Justice Van Syckel in *Joy* [*etc.*], *Co.* v. *Blum,* 55 N. J. L. 518, at page 520, 26 Atl. 861, at page 862: 'The right of trial by jury may be waived.' No distinction can be perceived between a waiver of this right by the parties after commencement of a suit and as incident to its prosecution and a general waiver as a result of a contract made prior to the commencement of legal proceedings, or, indeed, to the accrual of a possible cause of action. Nor can any distinction be perceived between a waiver of the right in the form of an express contract between the parties and a waiver which may arise as a result of a legal presumption under legislative authority."

We think this conclusive of this issue though the decision in *Re Opinion of the Justices,* 309 Mass. 571, 34 N. E. (2d) 527, fully covers the situation. Also the *Home Accident Insurance Co.* v. *Industrial Commission,* 34 Ariz. 201, 269 Pac. 501, and *Atkinson, Kier Brothers, Spicer Company* v. *Industrial Commission,* 35 Ariz. 48, 274 Pac. 634, have an especial bearing on the question.

█ Finally, it is contended that July 1, 1943, is the effective date of the act, because section 64 provides:

"*Effective date.* This act shall become effective July 1, 1943."

However, the act contains section 66, which is as follows:

*"Emergency clause.* To preserve the public peace, health, and safety it is necessary that this act shall become immediately operative. It is therefore declared to be an emergency measure, and shall take effect upon its passage in the manner provided by law."

These two provisions are in conflict and the question is, which shall prevail? Section 1, subd. (3), pt. 1, of article 4, of the Constitution, provides that:

" . . . no act passed by the legislature shall be operative for ninety days after the close of the session of the legislature enacting such measure, except such as require earlier operation to preserve the public peace, health, or safety, or to provide appropriations for the support and maintenance of the departments of the state and of state institutions; Provided, that no such emergency measure shall be considered passed by the legislature unless it shall state in a separate section why it is necessary that it shall become immediately operative, and shall be approved by the affirmative votes of two-thirds of the members elected to each house of the legislature, taken by roll call of ayes and nays, and also approved by the governor, . . . . "

When, therefore, this provision of the Constitution was complied with by including in the law the emergency clause, stating why its earlier operation than ninety days is necessary, and it was approved by the affirmative votes of two-thirds of the members elected to each house and approved by the governor, it was immediately effective. Such a measure can have no other effective date, and the inclusion of a provision in the act, making it effective on some other day, is a nullity, hence section 64 of the act is without force and effect and should be disregarded. That the members of the legislature, themselves, intended it to be effective upon passage and not on July 1, 1943, is shown by the fact that they appropriated $7,500, or so much thereof as might be necessary "for the

payment of employees' salaries and expenses of the commission in making preparations and obtaining supplies for the purpose of placing this act in operation on its effective date, which last named appropriation ($7,500) shall lapse at the close of the fiscal year ending June 30, 1943.'' The appropriation was wholly useless if the effective date was July 1, 1943, since it could not, in that event, have been used prior to the date upon which it lapsed. If it had been thought best to make the act effective on July 1, 1943, this could have been done by omitting the emergency clause and passing it as an ordinary measure, fixing the effective date any time after ninety days from the closing of the legislature.

It is the judgment of this court that the ''Arizona Occupational Disease Disability Law'' is valid and, hence, the alternative writ is made peremptory.

ROSS and STANFORD, JJ., concur.