718 P.2d 1021

**Douglas M. ALLEN, Jr. and Elizabeth Ann Allen, individually and as husband and wife, Plaintiffs-Appellants,**

v.

**SOUTHWEST SALT COMPANY, an Arizona corporation; Jerry Grott and Edna Grott, individually and as husband and wife, Defendants-Appellees.**

**No. 1 CA–CIV 8152.**

Court of Appeals of Arizona, Division 1, Department A.

March 25, 1986.

Lawrence O. Anderson, P.C. by Lawrence O. Anderson, Phoenix, for plaintiffs-appellants.

State Compensation Fund by John R. Greer, Phoenix, for defendants-appellees.

## OPINION

RICHARD M. DAVIS, Judge Pro Tem.

The plaintiffs-appellants Douglas Allen (Allen) and his wife brought this action against Allen's former employer, Southwest Salt Company (Southwest) and its president, Gerald Grott (Grott) and his wife, appellees, to recover for personal injuries received in the course of employment. Appellants contend that they are entitled to prosecute a claim for "intentional tort" notwithstanding the exclusive remedy provision of A.R.S. § 23–1022(A) and Allen's receipt of workers' compensation benefits. In the alternative, appellants seek to hold Southwest liable in tort in the capacity of a manufacturer. We affirm the trial court's grant of summary judgment.

## FACTS

In view of the posture of the case, the facts of record and all reasonable inferences to be derived therefrom must be viewed in the light favorable to appellants. *Grain*

*Dealers Mut. Ins. Co. v. James,* 118 Ariz. 116, 575 P.2d 315 (1978).

Southwest is engaged in the solution mining of salt near Luke Air Force Base. The saline solution is pumped to the surface and stored in a hard-bottomed pond. Southwest uses what it calls a "salt harvester" to break up the precipitating salt crystals so that they can be conveyed to the wash house, or refining facility.

The salt harvester was developed by Grott in evolutionary stages beginning in 1976. It is essentially an auger and a pumping device attached to a platform and pulled across the pond by a tractor. The auger breaks up the salt and moves it toward a suction box where it is pumped as a slurry to the wash house.

Allen testified in deposition that debris sometimes collected in or around the auger, interfering with its efficient operation. While Grott testified that it was a stressed company policy that the auger be shut off prior to any activity around it, Allen testified that his supervisor told him not to shut it off because it slowed down subsequent production. Allen also testified that he unsuccessfully recommended to Grott safety modifications which would have lessened the severity of his injuries.

The salt harvester developed by Southwest was used by it only in its own operations in Arizona and at a site in California. While Grott had given some general consideration to the idea of patenting and commercially exploiting the device, he had not done so and no salt harvester built by Southwest had ever been transferred to or used by any other entity.

Southwest carried workers' compensation insurance coverage with the State Compensation Fund. There is no claim in this case of failing to post notice of coverage as required by A.R.S. § 23-906.

On July 13, 1983 Allen was operating the salt harvester in the usual manner. Some weeds became entangled in the auger. Allen attempted to remove these with the auger in operation. His ring somehow became caught in the debris or auger, pulling his arm into the mechanism and causing severe injuries. Allen subsequently applied for workers' compensation benefits. His claim was accepted and as of September 10, 1984, he had received $43,616.81 in such benefits.

In his complaint Allen alleged that appellees' acts were "intentional, malicious, and in wilful and wanton disregard" of their "duty to protect plaintiff." At his deposition, however, Allen gave the following testimony, in response to questions by appellees' counsel:

Q. Mr. Allen, you have no reason to believe that this injury was intentionally caused you, do you?

A. No.

. . . . .

Q. Was your relationship with the people that you worked with, including from the bottom up to the top, a good relationship, leading up to the moment that you were injured?

A. Strictly business.

Q. Was there any animosity between you and anybody out there prior to this injury?

A. Not that I know of.

## DISCUSSION AND DECISION

Appellants contend that Arizona's leading case construing A.R.S. § 23-1022(A) and (B), *Serna v. Statewide Contractors, Inc.,* 6 Ariz.App. 12, 429 P.2d 504 (1967),[1] is unsound and obsolete; that it grants to employers a disfavored special immunity, contrary to principles expressed in *Ontiveros v. Borak,* 136 Ariz. 500, 667 P.2d 200 (1983); that the language "wilful disregard of the life, limb or bodily safety of employees" in § 23-1022(A) and Article 18, § 8 of the Constitution of Arizona indicates that a broader standard of liability should apply; and that the recent Ohio cases of *Blanken-*

---

**1.** *See also, Lowery v. Universal Match Corp.,* 6 Ariz.App. 98, 430 P.2d 444 (1967) and *Johnson v. Kerr-McGee Oil Industries, Inc.,* 129 Ariz. 393, 631 P.2d 548 (App.1981), *appeal dismissed,* 454 U.S. 1025, 102 S.Ct. 560, 70 L.Ed. 469 (1981).

*ship v. Cincinnati Milacron Chemicals, Inc.,* 69 Ohio St.2d 608, 433 N.E.2d 572 (1982) and *Jones v. VIP Development Co.,* 15 Ohio St.3d 90, 472 N.E.2d 1046 (1984), show appellants' entitlement to bring an action in intentional tort for what amounts to the intentional maintenance of a hazardous work place.[2] Finally, in this part of their argument, appellants point to the further holding in *Jones v. VIP, supra,* that the receipt of compensation is not a bar to the prosecution of an intentional tort claim against the employer. Appellants contend that *Kilpatrick v. Superior Court,* 105 Ariz. 413, 466 P.2d 18 (1970), indicates that this principle is acceptable in Arizona in an intentional tort setting.[3]

In *Serna v. Statewide Contractors, supra,* this court held in a flagrantly violative factual situation that a common law action for wilful wrongdoing could not be maintained unless it can be shown that there was a deliberate intent to inflict injury upon the employee. *Serna's* holding is grounded in § 23–1022, subsections (A) and (B), which read, in pertinent part, as follows:

A. The right to recover compensation pursuant to this chapter for injuries sustained by an employee is the exclusive remedy against the employer ... or any co-employee acting in the scope of his employment, ... except as provided by § 23–906, and except that if the injury is caused by the employer's wilful misconduct, or in the case of a co-employee by the co-employee's wilful misconduct, and the act causing the injury is the personal act of the employer, or in the case of a co-employee the personal act of the co-employee, ... or if a corporation, on the part of an elective officer of the corporation, and the act indicates a wilful disregard of the life, limb or bodily safety

of employees, the injured employee may either claim compensation or maintain an action at law for damages against the person or entity alleged to have engaged in the wilful misconduct.

B. 'Wilful misconduct' as used in this section means an act done knowingly and purposely with the direct object of injuring another.

In holding that the requisite intent could not be inferred from gross negligence, the *Serna* court cited an Ohio case, *Gildersleeve v. Newton Steel Co.,* 109 Ohio St. 341, 142 N.E. 678 (1924), which construed a like statute.

*Serna* is sound, and it is also in accord with the weight of authority. It is sound because its decision is mandated by our constitutional and statutory provisions, as a reading of Article 18, § 8 and A.R.S. § 23–1022 will confirm. That those provisions are in accord with those of most other states is reflected by recent decisions [4] and by Professor Larson. According to Larson, there must be a "genuine intentional injury," comparable to "an intentional left jab to the chin." 2A A. Larson, *Workmen's Compensation Law* § 68.13 at 13–8, 13–9, and 13–27 (1982). The line drawn by the people in ratifying article 18, § 8 and by the legislature in implementing it evokes Justice Holmes' observation that "even a dog distinguishes between being stumbled over and being kicked." Holmes, *The Common Law* p. 3 (1881) (Little, Brown & Co. 1881).

■■■ Appellants advance a brief argument that the provision in § 23–1022(A) and in Article 18, § 8 of the Arizona Constitution which reads "and the act indicates a wilful disregard of the life, limb or bodily safety of employees" should be construed as setting forth a separate and broader

---

2. A similar claim was so characterized in *Reed Tool Co. v. Copelin,* 689 S.W.2d 404 (Tex.1985).

3. Appellees argue that this issue was not presented by appellants below, but we find that it was, in connection with appellants' citation to *Gross v. Kenton Structural & Ornamental Ironworks, Inc.,* 581 F.Supp. 390 (S.D.Ohio 1984).

4. *Miller v. Ensco,* 286 Ark. 458, 692 S.W.2d 615 (1985); *Mingachos v. CBS,* 196 Conn. 91, 491 A.2d 368 (1985); *Noonan v. Spring Creek Forest Products,* 700 P.2d 623 (Mont.1985); *Kofron v. Amoco Chemical, Inc.,* 441 A.2d 226 (Del.Supr. 1982); and *cf. Reed Tool Co. v. Copelin,* 689 S.W.2d 404 (Tex.1985), which construes a statute less specific than A.R.S. § 23–1022.

basis of liability. We do not agree, because the words "the act" refer back to the preceding language describing the act causing injury, which act constituted the wilful misconduct. The provision in question is cumulative to what precedes it rather than describing a separate basis for liability, and in its purport would seem to exclude a trivial act of horseplay. Appellants also argue generally that Article 18, § 6 of our constitution reserves to him a cause of action, but it has been held that the compensation system mandated by Article 18, § 8 with its provisions for election of remedies qualifies, within the limits of its provisions, the otherwise absolute terms of § 6. *See Anderson v. Industrial Commission,* 147 Ariz. 456, 711 P.2d 595 (Ariz. Sup.Ct.1985).

Turning to appellant's argument based on the recent Ohio cases, it is true that our original workmen's compensation law came from Ohio via Utah, *see Industrial Comm'n v. Frohmiller,* 60 Ariz. 464, 140 P.2d 219 (1943), and as *Serna* indicates Ohio is the source of § 23–1022. The Ohio statute however, Ohio General Code § 1465–76, was repealed by implication in 1924 and explicitly repealed in 1931. *Mabley & Carew Co. v. Lee,* 129 Ohio St. 69, 193 N.E. 745, 747 (1934). For that reason, alone, the recent Ohio cases are not persuasive.

In *Blankenship* and *Jones v. VIP, supra,* and in *Mandolidis v. Elkins Industries, Inc.,* 161 W.Va. 695, 246 S.E.2d 907, 96 A.L.R.3d 1035 (1978), the Ohio and West Virginia courts muted the concept of deliberately intended injury by broadening the concept to include aggravated forms of negligence. Professor Larson calls this view "distinctly out-of-line." 2A A. Larson

§ 68.13, note 10.1 at 13–8, 13–9 (1983). If this could be done in West Virginia and Ohio, it cannot be done in the teeth of the very specific provisions of Article 18, § 8 and A.R.S. § 23–1022. Our constitutional provision, re-ratified in 1980, expressly aims at avoiding the "burdensome, expensive and litigious" remedies producing "uncertain and unequal" results which fault-oriented court proceedings entail.[5] Appellants argue that *Serna* encourages employer gross negligence,[6] but this is an argument which at this point in Arizona must be addressed to the people and the legislature.

■ Our decision, however, must be based specifically upon A.R.S. § 23–1024, which provides with explicit basis in Article 18, § 8 of the Constitution of Arizona that acceptance of compensation constitutes a waiver of the right to bring an action.

Under § 23–1024, receipt of compensation benefits bars an action for damages. *Anderson v. Industrial Commission, supra; Sneed v. Belt,* 130 Ariz. 229, 635 P.2d 517 (App.1981); *Southwest Cooperative Wholesale v. Superior Court,* 13 Ariz.App. 453, 477 P.2d 572 (1970); *Ream v. Wendt,* 2 Ariz.App. 497, 410 P.2d 119 (1966). The Ohio court in *Jones v. VIP, supra,* did not consider a statute similar to § 23–1024; even if it had, the Arizona authorities are clear. Any argument based on *Kilpatrick* is answered by *Anderson.*

Appellants' last contention is that Southwest is liable in damages for strict tort liability in its capacity as the manufacturer of the salt harvester. This theory of liability which a few courts have adopted qualifying the exclusive remedy provision is known as the "dual capacity" doctrine.

5. West Virginia's post-*Mandolidis* experience is noted in *In Wake of Mandolidis,* 84 W.Va.Law Review 893 (1982). The 1983 West Virginia legislation supplanting *Mandolidis* is set out in Larson's 1985 pocket-part supplement to § 68.13 at p. 13–8.

6. We note in that connection the provisions of the Occupational Safety and Health Act, A.R.S. § 23–401 et seq. In this case Grott testified that the "OSHA people" objected to some operations

at Southwest but made no objection to the auger.

The workers' compensation laws are essentially a system of no-fault industrial injury insurance. An appropriate compliment to such a system in a progressive society committed to safety and well-being is a reasonable system of safety standards with significant penalties for violation and adequate resources for enforcement.

This doctrine holds that if an employee is injured in like manner to a consumer or user of a product produced and marketed by his employer he should have the same right to recover damages as any other consumer or user.

This court considered the dual capacity doctrine in *Hills v. Salt River Project Ass'n,* 144 Ariz. 421, 698 P.2d 216 (App. 1985). While we did not foreclose application of the doctrine under appropriate facts, we noted that even those jurisdictions recognizing the doctrine have limited its applicability to situations where the employer has placed the device in question in the stream of commerce. *Hills, supra,* at 144 Ariz. 425–26, 698 P.2d at 220–21.

 This is not such a case. Southwest was engaged in the production of salt and made the salt harvester only for its own use. Further, the equipment was furnished to appellant as an employee and not as a member of the consuming public. There could be no dual capacity liability.

Appellants have no viable claim against Southwest and the nonliability of Grott is co-extensive. The trial court's summary judgment must be affirmed.

Appellees request attorney's fees for frivolous appeal pursuant to ARCAP Rule 25. They point out that *Hills, supra,* was decided prior to briefing and they further contend that even apart from the waiver aspect appellants' intentional tort claim was inadequately alleged and unsupported by closely relevant authority. Appellees rely upon this court's holding imposing penalties for frivolous appeal in *Price v. Price,* 134 Ariz. 112, 654 P.2d 46 (App. 1982). We indicated in *Price* that our authority to penalize for frivolous appeal should be exercised sparingly.

We · have noted that our original workmen's compensation law came from Ohio and that *Serna* cites Ohio authority. While Arizona and Ohio legislation and judicial authorities have grown apart over the years, that relational aspect is of some significance. It is further obvious that voluminous asbestos and similar litigation as well as the *Mandolidis* and Ohio decisions have inspired a re-examination of this area of the law across the land. Our supreme court had never ruled explicitly on the waiver issue prior to *Anderson.* This cannot be deemed a frivolous appeal.

Judgment affirmed.

GREER, P.J., and BROOKS, J., concur.
NOTE: RICHARD M. DAVIS was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz.Const. Art. VI, § 3 and A.R.S. §§ 12–145–47.