34 P.3d 375

**Rudy GAMEZ and Alice Gamez, husband and wife, Plaintiffs/Appellants,**

v.

**BRUSH WELLMAN, INC., Defendant/Appellee.**

No. 2 CA–CV 99–0208.

Court of Appeals of Arizona, Division 2, Department A.

Sept. 27, 2001.

Redesignated as Opinion Nov. 14, 2001.

**268**

Baron & Budd, P.C., By Frederick M. Baron, Steve Baughman Jensen, and Alicia D. Butler, Dallas, TX, Dickerson, Butler & Rodriguez, P.C., By J. Patrick Butler, Tucson, James Heckbert, Steamboat Springs, CO, for Plaintiffs/Appellants.

Rusing and Lopez, P.L.L.C., By Michael J. Rusing and Cynthia T. Kuhn, Tucson, Jones Day Reavis & Pogue, By Jeffrey D. Ubersax, Cleveland, OH, Downey & Knickrehm, By Thomas E. Downey, Jr., Denver, CO, for Defendant/Appellee.

OPINION

FLÓREZ, J.

¶ 1 Appellants Rudy and Alice Gamez challenge the trial court's grant of summary judgment in favor of appellee Brush Wellman, Inc., Rudy's former employer. The Gamezes argue that the trial court erred in rejecting their claims for wilful misconduct, breach of contract, and bad faith stemming from Rudy's employment-related exposure to beryllium. They also challenge the trial court's award of sanctions against them for refusing to accept an offer of judgment. We affirm the trial court's grant of summary judgment in favor of Brush Wellman, but vacate the court's award of sanctions against the Gamezes.

¶ 2 When reviewing the grant of a motion for summary judgment, we view the facts in the light most favorable to the nonmoving party. *Southwest Auto Painting & Body Repair, Inc. v. Binsfeld*, 183 Ariz. 444, 904 P.2d 1268 (App.1995). Rudy began working for Brush Wellman in a production facility in October 1991. After a drill bit punctured Rudy's finger, blood tests revealed that, although he had not developed chronic beryllium disease (CBD), Rudy had possibly been sensitized to beryllium. As a result, Rudy accepted Brush Wellman's offer that he transfer to a different job, but he subsequently decided to return to his production position. After Rudy was diagnosed with CBD in 1995, Brush Wellman offered to transfer him to an alternative position or pay him one year's wages and benefits if he would voluntarily leave his employment. Although Rudy never selected either option, he did not return to the work place after his CBD diagnosis. Brush Wellman continued to pay Rudy wages and benefits until March 1998.

¶ 3 The Gamezes sued Brush Wellman in June 1996 for wilful misconduct, contending that Brush Wellman had "engaged in [a] course of conduct knowing that such conduct was likely to cause extreme physical, financial and emotional hardship to Plaintiffs." They later amended their complaint to add claims for breach of contract and bad faith. The trial court granted summary judgment on all three claims and awarded costs in the

amount of $65,121.58 to Brush Wellman as a sanction pursuant to Rule 68, Ariz. R. Civ. P., 16 A.R.S., Pt. 2.

¶ 4 Summary judgment should be granted if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c), 16 A. R.S., Pt. 2; *Sanchez v. City of Tucson,* 191 Ariz. 128, 953 P.2d 168 (1998). We review questions of law, including the interpretation of statutes and constitutional issues, and mixed questions of fact and law de novo. *In re United States Currency in the Amount of $26,980.00,* 193 Ariz. 427, 973 P.2d 1184 (App.1998); *Birth Hope Adoption Agency, Inc. v. Doe,* 190 Ariz. 285, 947 P.2d 859 (App.1997). We conclude that the trial court did not err in applying the law to the undisputed material facts.

¶ 5 The Gamezes first contend that Rudy's injury resulted from Brush Wellman's wilful misconduct and, thus, that the trial court erred in granting summary judgment in favor of Brush Wellman on this claim. It is well settled that work-related injury claims are generally redressed exclusively under Arizona's workers' compensation scheme. A.R.S. § 23–1022. Thus, such claims are controlled by A.R.S. § 23–1024(A), which provides that "[a]n employee ... who accepts [workers'] compensation waives the right to exercise any option to institute proceedings in court against his employer." *See Anderson v. Industrial Comm'n,* 147 Ariz. 456, 711 P.2d 595 (1985). However, article XVIII, § 8, of the Arizona Constitution allows an employee who would otherwise be barred by the workers' compensation exclusivity provision to sue his or her employer if the employee has suffered an injury caused by the employer's wilful misconduct or an injury that is "the result of an act done by the employer or a person employed by the employer knowingly and purposefully with the direct object of injuring another, and the act indicates a wilful disregard of the life, limb or bodily safety of employees." This constitutional guarantee is codified in § 23–1022(A), which allows an injured employee to "either claim compensation or maintain an action at law for damages against the person or entity alleged to have engaged in the wilful misconduct."

¶ 6 The question, then, is whether a material issue of fact exists that Brush Wellman engaged in wilful misconduct so as to allow the Gamezes to overcome the presumption of waiver in § 23–1024(A). A wilful misconduct action includes four elements: (1) the employer's wilful misconduct must have been the cause of the employee's injury, (2) the wilful misconduct must have been "an act done ... knowingly and purposely with the direct object of injuring another," (3) the act that caused the injury must have been the personal act of the employer, and (4) the act must have reflected "a wilful disregard of the life, limb or bodily safety of employees." Ariz. Const. art. XVIII, § 8; *see Serna v. Statewide Contractors, Inc.,* 6 Ariz.App. 12, 429 P.2d 504 (1967).

¶ 7 Gross negligence is not sufficient to establish wilful misconduct under § 23–1022. *Serna.* The "direct object" of the employer's actions must have been to "injur[e] another." § 23–1022(B); *see Allen v. Southwest Salt Co.,* 149 Ariz. 368, 718 P.2d 1021 (App.1986). Generally, this means that the employer's liability

> cannot ... be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting an injury.
>
> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering employees to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, wilfully violating a safety statute, ... or withholding information about worksite hazards, the conduct still falls short of the kind of actual intention to injure that robs the injury of accidental character.

6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 103.03 at 103–7 (2001) (footnotes omitted).

¶ 8 In *Serna,* two employees were killed after a ditch collapsed. The workers' families sued the employer for wrongful death, alleging that the deaths were the result of the employer's wilful misconduct under § 23-1022 and, therefore, that workers' compensation was not the exclusive remedy for their claims. The trial court granted summary judgment in favor of the employer, and Division One of this court affirmed, even though the facts showed that the ditch was twenty-five feet deep and insufficiently sloped or shored to prevent a cave-in. Indeed, a previous cave-in had buried one of the decedents to his waist. And, there was no safety ladder near the men at the place in the ditch where they had been digging. Moreover, before the accident, state industrial commission inspectors had warned the employer of the very conditions that caused the deaths and had recommended corrective measures. And although Division One stated that it had "no difficulty in finding that the cave-in causing the deaths of the decedents was the direct result of the refusal to follow the safety recommendations of the Commission's inspectors," the court concluded:

> It would appear that our statute as well as the principles governing the interpretation of the workmen's compensation statutes which provide for suit at common law for the employer's willful misconduct require that there be deliberate intention as distinguished from some kind of intention presumed from gross negligence. 2 Larson, Workmen's Compensation Law, Sec. 69.20 (1961). The Arizona statute is most restrictive in this regard. It is the opinion of this Court that the facts presented on review, viewed in the light most favorable to the plaintiff-employees, clearly establish the negligence of the defendant-employer but fail to establish that the employer, through its elected officer, acted with the intent required by our statute. A.R.S. § 23-1022.... We must regretfully state that under our statutes the facts do not bring appellants within the exception of A.R.S. § 23-1022.

*Serna,* 6 Ariz.App. at 16, 429 P.2d at 508.

¶ 9 Our courts have reached similar conclusions in *Diaz v. Magma Copper Co.,* 190 Ariz. 544, 950 P.2d 1165 (App.1997); *Johnson v. Kerr–McGee Oil Industries, Inc.,* 129 Ariz. 393, 631 P.2d 548 (App.1981); and *Lowery v. Universal Match Corp.,* 6 Ariz.App. 98, 430 P.2d 444 (1967). The courts found that the workers' lawsuits against the employers in those cases were foreclosed by the exclusivity provision in the workers' compensation statutes, concluding that, although there might have been intentional failures to warn by the employers and/or negligent disregard for safety warnings, the wilful misconduct claims were not well taken. In *Diaz,* the court stated that, "while there may be evidence here that Magma was negligent in ignoring safety hazards and delaying the entry of paramedics until Diaz had been extricated ..., there is no evidence that Magma's objective was to injure Diaz." 190 Ariz. at 551, 950 P.2d at 1172. Thus, this court concluded that the employer's conduct "did not rise to the level of willful misconduct" in light of the holding in *Serna. Id.* In *Johnson,* the court found that the "intentional ... failure to warn" had not amounted to an "actual intent to injure" the employee. 129 Ariz. at 398, 631 P.2d at 553. And, in *Lowery,* the court concluded that the employer had engaged in no conduct that would have satisfied the wilful intent required by the statute even though the employee had alleged that the employer had failed to take proper safety precautions and to provide safety devices knowing that the employee would be exposed to dangerous chemicals and gases.

■ ¶ 10 Even viewed in the light most favorable to the Gamezes, the evidence they presented does not show that Brush Wellman acted knowingly or maliciously or that it disregarded the dangers its employees face when working with beryllium; that Brush Wellman intentionally failed to warn its employees of what the Gamezes claim is a substantial certainty that they will develop CBD; or that Brush Wellman sacrificed employee safety for higher profits. Instead, the evidence shows that Brush Wellman informed Rudy of the risks involved in working with beryllium during his first interview for prospective employment. But, even if all of the Gamezes' allegations had been proved, they would not establish that Brush Wellman's direct objective was to cause injury to Rudy

because, in this state, there must be a " 'genuine intentional injury,' comparable to 'an intentional left jab to the chin.' " *Allen,* 149 Ariz. at 371, 718 P.2d at 1024, *quoting* 2A Arthur Larson, *Workmen's Compensation Law* § 68.13 at 13–8, 13–9, and 13–27 (1982). A similar result occurred in *Davis v. United States Employers Council, Inc.,* 147 Or.App. 164, 934 P.2d 1142, 1149 (1997), in which the court held that, "regardless of whether the employer acted in a calculated fashion to maximize its profits in utter disregard of the certainty of injury to its employees," a claim by an employee is statutorily barred unless the employee can establish that the employer intended to injure him or her.

¶ 11 Because the Gamezes failed to show that Brush Wellman intended to cause injury to Rudy, we agree with the trial court's conclusion that their claim does not fall within the wilful misconduct exception of § 23–1022(A). Therefore, the trial court properly entered summary judgment against the Gamezes on this claim.

■ ¶ 12 We also conclude that the trial court correctly granted summary judgment on the Gamezes' breach of contract and bad faith claims. On the breach of contract claim, the trial court ruled:

> At the time of [Rudy's] hire, [Brush Wellman] ha[d] a 1989 policy in effect that provided for certain benefits if an employee was diagnosed with berylliosis. On January 1, 1992, [Brush Wellman] had in effect an ERISA [Employee Retirement Income Security Act] plan that provided for certain benefits in the event that one of its employees contracted [CBD]. In 1992, [Rudy] was told of the adoption of the new plan and that it applied to him. In 1993, testing on [Rudy] demonstrated he was sensitized to beryllium, but had no evidence of beryllium disease. In 1995, [Rudy] was first diagnosed with CBD.
>
> . . . .
>
> . . . The 1992 ERISA plan governs [the Gamezes'] claim as the 1989 plan only applied to persons diagnosed with berylliosis. [Rudy] was first diagnosed with CBD in 1995 and 1993 testing demonstrated no beryllium disease. [Brush Wellman] valid-

ly modified its disability benefits plan with respect to beryllium disease, effective January 1, 1992. As of January 1, 1992, [Rudy] had no vested rights in the 1989 plan, as the triggering of benefits under that plan only occurred upon the diagnosis of berylliosis.

¶ 13 In addition to its 1989 policy, on which the Gamezes do not rely and which Rudy never saw, Brush Wellman had orally represented to Rudy when he was hired in 1991 that, if he ever developed CBD, he could leave his job but continue to receive his full wages and benefits for life. The Gamezes maintain that, because Rudy never received consideration for or accepted Brush Wellman's offer to modify the "full wages and benefits for life" term of Rudy's original employment contract, the 1992 ERISA plan neither applied nor was effective as to him, and therefore, they are not precluded under 29 U.S.C. § 1144(a) from suing for breach of contract. Section 1144(a) preempts all state laws that relate to any employee benefit plan established or maintained by an employer to provide benefits in the event of "sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1)(A). Because the Gamezes' claim, based on Rudy's alleged oral contract with Brush Wellman at the time he was hired in 1991, relates to the same matter as the ERISA benefits policy, their common law breach of contract claim is preempted. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091 (9th Cir.1985).

¶ 14 We also note that the case of *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073 (7th Cir.1992), is similar to this. There, the Seventh Circuit Court of Appeals found that the plaintiff's state law claims were preempted because his lawsuit was "based on the difference between the pension promised by contract and the pension established by the plan" as it "relate[d] to" the pension plan. *Id.* at 1077. *See also Tingey v. Pixley-Richards West, Inc.,* 953 F.2d 1124 (9th Cir. 1992) (claim under Arizona law for tortious breach of duty of good faith and fair dealing preempted by ERISA). However, we would uphold the trial court's grant of summary

judgment on this issue even if ERISA did not preempt the Gamezes' claim.

¶ 15 Essentially, the Gamezes challenge the trial court's grant of summary judgment on their breach of contract claim on the ground that the "record contains no evidence of a valid unilateral modification of the parties' 1991 [oral] contract." In support of their claim, the Gamezes argue that, "[i]n *Demasse v. ITT [Corp.]*, [194 Ariz. 500, 984 P.2d 1138 (1999),] the Supreme Court held that an employer may not unilaterally modify a contract with an[y] employee without the employee's knowing assent and the payment of additional consideration." The Gamezes' contention, based on language taken out of context, is patently incorrect.

■ ¶ 16 Although our supreme court held in *Demasse* that "[a]n employer cannot unilaterally modify and thus negate the effect of implied-in-fact contractual terms," it did so because "the question certified [from the Ninth Circuit Court of Appeals] posit[ed] that the Demasse employees have a contract term providing them layoff seniority rights." *Id.* at ¶ 51. Moreover, *Demasse* was an employment security case based on the employee handbook, not an employment benefits case.[1] And, in reaching its ultimate holding, the court explained that:

> At-will employment contracts are unilateral and typically start with an employer's offer of a wage in exchange for work performed; subsequent performance by the employee provides consideration to create the contract. Thus, before performance is rendered, the offer can be modified by the employer's unilateral withdrawal of the old offer and the substitution of a new one: the employer makes a new offer with different terms and the employee again accepts the new offer by performance (such as continued employment). Thus a new unilateral contract is formed—a day's work for a day's wages.

*Id.* at ¶ 12 (citations omitted).

¶ 17 Moreover, Rudy's diagnosis of CBD followed Brush Wellman's adoption of its CBD benefits policy on January 1, 1992. Brush Wellman could modify the benefits package it had offered Rudy when he was hired because his right to those benefits had not vested because he did not contract CBD during the applicable period, i.e., before Brush Wellman's adoption of the 1992 plan. *See Fund Manager v. City of Phoenix Police Dep't Pub. Safety Personnel Retirement Sys. Bd.*, 151 Ariz. 487, 728 P.2d 1237 (App.1986). Because the Gamezes neither alleged in their complaint nor maintained below or on appeal that Rudy was not an at-will employee, and because Rudy's interest in the pre–1992 policy or oral agreement failed to vest, *see Fund Manager*, Rudy was not entitled to additional consideration for Brush Wellman's modification of the benefits it provided him. Thus, Rudy had no right to any specific benefit before 1992. The trial court did not err in granting summary judgment to Brush Wellman on this count.

¶ 18 In their complaint, the Gamezes also alleged that, by breaching its contract with Rudy "to advance its own economic interest, ... [Brush Wellman] ha[d] violated the covenant of good faith and fair dealing inherent in [the] contract." In granting summary judgment on this issue, the trial court reasoned that ERISA also preempted the Gamezes' bad faith claim because Rudy's rights in the pre–1992 policy had not vested before the effective date of the 1992 policy. We agree.

■ ¶ 19 As a general rule, the law implies a covenant of good faith and fair dealing in every contract. *Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 985 P.2d 556 (App. 1998). The implied covenant "requires [that] 'neither party do anything that will injure the right of the other to receive the benefits of their agreement.'" *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 197, 888 P.2d 1375, 1384 (App.1994), *quoting Wagenseller v. Scottsdale Mem.'l Hosp.*, 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985). As we have

---

1. As the court explained, "[H]andbooks can include a variety of non-promissory information for employees: the company's mission, employee guidelines, ... and benefits. While a handbook generally promulgates company rules, mostly non-contractual in nature, only a few substantively govern the employee's job and employment expectations." *Demasse v. ITT Corp.*, 194 Ariz. 500, ¶ 16, 984 P.2d 1138, ¶ 16 (1999).

already explained, Rudy's interests in the pre–1992 plan did not vest, so Brush Wellman was not prohibited from modifying its CBD benefits package. Moreover, because the Gamezes' bad faith claim relates to Brush Wellman's imposition of an ERISA benefits plan, it is also preempted. *See Tingey; cf. DeVoll v. Burdick Painting, Inc.*, 35 F.3d 408 (9th Cir.1994) (breach of promise claim relating to ERISA-qualified employee benefits claim preempted); *Ellenburg*, 763 F.2d at 1095 ("ERISA preempts common law theories of breach of contract implied in fact, promissory estoppel, estoppel by conduct, fraud and deceit, and breach of contract."). The trial court's grant of summary judgment on this count, therefore, was appropriate.

¶ 20 Finally, the Gamezes contend that the trial court erred in imposing sanctions because Brush Wellman's offer was "[a]n unapportioned joint offer that encompasse[d] multiple parties [and] claims[, and as such, was] insufficient to support an award of Rule 68 sanctions." Although Rule 68(d) provides that "the offeree must pay, as a sanction," the offeror's costs when "the judgment finally obtained is equal to, or more favorable to the offeror than ... the offer," this rule does not apply when an offeror fails to apportion a joint offer of judgment. *Duke v. Cochise County*, 189 Ariz. 35, 938 P.2d 84 (App.1996).

¶ 21 Brush Wellman made an offer of judgment in the amount of $50,000 plus $25,000 attorney's fees before summary judgment was entered, an offer the Gamezes rejected. Brush Wellman argues that the trial court properly imposed sanctions against the Gamezes because it granted summary judgment for Brush Wellman on all claims and, pointing to *Sheppard v. Crow–Barker–Paul No. 1 Ltd. Partnership*, 192 Ariz. 539, 968 P.2d 612 (App.1998), that its offer did not need to be apportioned between the parties and their claims due to the "derivative and joint nature of Alice Gamez' claim."

¶ 22 In *Sheppard*, the trial court properly imposed Rule 68(d) sanctions on a defendant for failing to accept a single offer of judgment even though the offer represented a minor son's personal injury claim and his father's claim for the expenses he had

incurred in securing medical treatment for his son. In upholding the award of sanctions, this court reasoned that *Duke* was inapplicable because the father's and the son's claims "are ordinarily two aspects of an individual personal injury claim, ... and were divided solely due to [the son's] minority." *Id.* at ¶ 58. Because *Sheppard* does not apply here, we follow *Duke* and vacate the award of sanctions.

¶ 23 Affirmed in part; vacated in part.

J. WILLIAM BRAMMER, Jr., P.J. and JOHN PELANDER, J., concurring.