950 P.2d 1165

Rachel and Augustine DIAZ, wife and husband, parents of Leonardo M. Diaz, deceased, Plaintiffs/Appellants,

v.

MAGMA COPPER COMPANY, a Delaware corporation; State of Arizona; Douglas Martin, Arizona Mine Inspector, Defendants/Appellees.

Rachel and Augustine DIAZ, wife and husband, Plaintiffs/Appellant,

v.

David NECOCHEA, Defendant/Appellee.

No. 2 CA–CV 96–0051.

Court of Appeals of Arizona, Division 2, Department B.

May 13, 1997.

Review Denied Feb. 18, 1998.*

* McGregor, J., did not participate in the determination of this matter.

Miller, Pitt & McAnally, P.C. by Thomas G. Cotter, Tucson, for Plaintiffs/Appellants.

Grant Woods, Attorney General by Thomas J. Dennis, Phoenix, for Defendants/Appellees State of Arizona and Martin.

Korn Waterman & Simon, P.C. by Diana J. Simon, Tucson, for Defendants/Appellees Necochea and Magma Copper Company.

## OPINION

ESPINOSA, Presiding Judge.

Appellants Rachel and Augustine Diaz appeal from summary judgments granted in favor of appellees Magma Copper Company, Magma employee David Necochea, the State of Arizona, and State Mine Inspector Douglas Martin in the Diazes' action seeking damages for the death of their son Leonardo Diaz in a mining accident. For the reasons set forth below, we affirm the judgment granted in favor of Magma and Necochea, but reverse the judgment granted in favor of the State and Martin and remand for further proceedings.

### Facts and Procedural History

We view the evidence and all reasonable inferences therefrom in the light most favor-

able to the party opposing the motion below. *Hill–Shafer Partnership v. Chilson Family Trust,* 165 Ariz. 469, 799 P.2d 810 (1990). Leonardo Diaz worked at Magma Copper Company's San Manuel mine as a "chute blaster." A chute blaster keeps "muck" (ore-containing rock broken up by explosives) flowing smoothly down vertical shafts called "raises." The chute blaster ensures that the muck flowing from the ore body is small enough to pass through a "grizzly," basically, a sieve made of steel rails placed 17 inches apart. After passing through the grizzly, the muck continues down the raise to an underground train that takes it to the surface. To prevent miners from falling between the grizzly rails, a nylon lanyard is attached from their lamp belt to an overhead safety line.

On December 14, 1993, Diaz was working in a "grizzly drift" that was 140 feet long with eight grizzlies spaced 17½ feet apart. He had been instructed to keep his raises full of muck, that is, to keep muck flowing in all eight grizzlies. Shortly after 8:00 that evening, a coworker heard a cry for help and saw Diaz's lanyard between the grizzly rails and Diaz buried in muck to his waist, with his head about one foot below the rails. Mine personnel attempted to rescue Diaz, but it took almost three hours to extricate him, and by then Diaz had stopped breathing. During this time, Magma put the company ambulance on standby and alerted the local hospital, but declined offers of assistance from San Manuel medical personnel. Magma eventually summoned local paramedics who arrived shortly after Diaz was extricated and tried unsuccessfully to revive him. Diaz was pronounced dead from "mechanical asphyxiation." It was subsequently determined that the overhead safety line had failed. At the time of the accident, Diaz was unmarried, had no dependents, and was subject to the provisions of the Workers' Compensation Act ("the Act"). A.R.S. §§ 23–901 to 23–1091.

The Diazes sued the State of Arizona and State Mine Inspector Douglas Martin, seeking damages for civil rights violations pursuant to 42 U.S.C. § 1983 and wrongful death based on failure to discover and report safety violations during statutorily required inspections. Their complaint also alleged claims against Magma for wrongful death and employer liability. A.R.S. § 23–801. The Diazes later brought a separate action for wrongful death and medical negligence against David Necochea, a Magma dispensary worker who had administered first aid to Diaz while he was trapped. The two actions were consolidated.

Magma moved for summary judgment on the ground the Diazes' claims were barred by the exclusive remedy provisions of the Act and did not fall within any of the statutory exceptions. Necochea's motion for summary judgment asserted coemployee immunity pursuant to A.R.S. § 23–1022(A). The State too sought summary judgment, arguing that no cause of action existed under Section 1983, that mine inspectors have no legal duty enforceable through a private cause of action, and that it was entitled to immunity under A.R.S. § 12–820.01. The Diazes subsequently amended their complaint to add a claim for bad faith under the Act. The trial court granted Magma's motion to dismiss the bad faith claim and granted the motions for summary judgment. This appeal followed.[1]

### Standard of Review

Whether the Diazes' claims against Magma and Necochea are barred under Arizona's workers' compensation scheme and whether the State may invoke statutory immunity are questions of law or mixed questions of fact and law which are reviewed *de novo. Baker v. Clover,* 177 Ariz. 37, 864 P.2d 1069 (App. 1993).

### Constitutionality of Exclusive Workers' Compensation Remedies

**a. Article 18 § 6 and Employer's Liability for Wrongful Death**

The Diazes first contend that, as applied to them, the exclusivity provisions of the Workers' Compensation Act violate the Arizona Constitution, primarily Article 18 § 6, which states: "The right of action to recover damages for injuries shall never be

---

1. On appeal, the Diazes do not challenge the trial court's ruling as to their Section 1983 claim.

abrogated, and the amount recovered shall not be subject to any statutory limitation." The Diazes argue the legislature cannot prohibit their wrongful death and employer's liability claims, lacking express constitutional authorization to do so.

The trial court relied on *Mariscal v. American Smelting & Refining Co.*, 113 Ariz. 148, 548 P.2d 412 (1976), in determining that the Diazes' claims against Magma were barred by law. The Diazes argue that this court should not "extend" that case to uphold the trial court's ruling. *Mariscal*, however, is directly on point. There, our supreme court held that nondependent parents of an employee who was subject to the provisions of the Act could not maintain a wrongful death action for loss of consortium against the employer. The Diazes attempt to distinguish *Mariscal* by arguing that the court there did not consider the constitutional claims raised in this appeal and that a wrongful death action has since been recognized to be a "fundamental right." We decline to adopt this argument for several reasons.

The law is well established that, as to employees covered by the Act, its exclusive remedy provisions do not offend the anti-abrogation clause. "[T]he compensation system mandated by Article 18, § 8 [directing the legislature to create the workers' compensation system] with its provisions for election of remedies qualifies, within the limits of its provisions, the otherwise absolute terms of § 6." *Allen v. Southwest Salt Co.*, 149 Ariz. 368, 372, 718 P.2d 1021, 1025 (App. 1986). *See also Anderson v. Industrial Commission*, 147 Ariz. 456, 711 P.2d 595 (1985); *Pressley v. Industrial Commission*, 73 Ariz. 22, 236 P.2d 1011 (1951). Furthermore, an employee's decision to accept workers' compensation benefits, thereby voluntarily relinquishing the right under article 18, § 6, to bring an action against the employer, binds the worker's family as well. *Dunn v. Industrial Commission*, 177 Ariz. 190, 866 P.2d 858 (1994); *Conner v. El Paso Natural Gas Co.*, 123 Ariz. 291, 599 P.2d 247 (App.

1979). Those cases, however, involved dependents of the employee who were generally eligible to receive death benefits under the Act. The Diazes argue that as nondependents who are not entitled to benefits, they cannot constitutionally be bound by their son's election.[2]

In *Mardian Construction Co. v. Superior Court*, 157 Ariz. 103, 754 P.2d 1378 (App. 1988), Division One of this court considered a loss of consortium claim brought by an employee's wife against her husband's employer arising out of injuries he had sustained during the course and within the scope of his employment. In concluding that Arizona's workers' compensation scheme evidences a clear intent "to bar *any* common law right-of-action which might possibly flow from a work-related injury," (emphasis added), the court adopted the rationale of former Chief Justice Burger, then writing for the District of Columbia Circuit Court of Appeals in *Smither and Co. v. Coles,* 100 U.S.App.D.C. 68, 70, 242 F.2d 220, 222, *cert. denied,* 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1429 (1957):

> The history of the development of [workers' compensation statutes] creating a compensable right independent of the employer's negligence and notwithstanding an employee's contributory negligence, recalls that the keystone was the exclusiveness of the remedy. This concept emerged from a balancing of the sacrifices and gains of both employees and employers, in which the former relinquished whatever rights they had at common law in exchange for a sure recovery under the compensation statutes, while the employers on their part, in accepting a definite and exclusive liability, assumed an added cost of operation which in time could be actuarially measured and accurately predicted; incident to this both parties realized a saving in the form of reduced hazards and costs of litigation.

\* \* \* \* \* \*

---

**2.** We note that the record does not establish whether the Diazes were necessarily excluded from receiving death benefits under A.R.S. § 23-1046(A)(1), and Magma did pay death benefits on Diaz's behalf for mortuary, cemetery, and ambulance expenses, relieving the Diazes of those obligations, which they had assumed. Whether they "accepted" those benefits for purposes of the Act was disputed by the Diazes but not resolved below.

Thus, anything that tends to erode the exclusiveness of either the liability or the recovery strikes at the very foundation of statutory schemes of this kind, now universally accepted and acknowledged.

*Mardian,* 157 Ariz. at 106, 754 P.2d at 1381.

While *Mardian* did not deal with the constitutional theory advanced here, we find its rationale pertinent to our examination of the Diazes' claims, particularly since, like the Diazes, the plaintiff spouse in *Mardian* was not a "dependent" for purposes of the Act's compensation provisions or her independent tort claim.[3] In this vein the court noted, "In Arizona, these statutes have uniformly been held to preclude actions against an employer for job related injuries resulting in the death of an employee even though the 'injury' suffered is to someone other than the employee." *Id.* at 105, 754 P.2d at 1380. *Cf. Hills v. Salt River Project Association,* 144 Ariz. 421, 424, 698 P.2d 216, 219 (App.1985) ("The exclusive remedy provision also immunizes the employer from wrongful death actions by a deceased worker's survivors or personal representative."). Professor Larson has pointed out that exclusive remedy provisions are "part of the *quid pro quo* in which the sacrifices and gains of employees and employers are to some extent put in balance, for, while the employer assumes a new liability without fault, he is relieved of the prospect of large damage verdicts." 2A Arthur Larson, *The Law of Workmen's Compensation* § 65.11 at 12–1, 12–12 (1996). We agree with Magma that it would significantly undermine this purpose if nondependent family members could pursue independent causes of action against employers regardless of the employee's election of the Act's benefits. It also would be incongruous to exempt nondependent parents with loss of consortium claims when such claims by the employee's spouse and children are preempted, regardless of whether they are entitled to any compensation or the amount thereof. *See Mardian;* A.R.S. § 23–1046(A).

We next observe that while a wrongful death action is an independent claim for damages sustained by the decedent's survivors, *Frongillo v. Grimmett,* 163 Ariz. 369, 788 P.2d 102 (App.1989), plaintiffs must still come within the terms of the wrongful death statute, A.R.S. § 12–611. *Schoenrock v. Cigna Health Plan of Arizona, Inc.,* 148 Ariz. 548, 715 P.2d 1236 (App.1985); *Hutton v. Davis,* 26 Ariz.App. 215, 547 P.2d 486 (1976). Section 12–611 provides that the right to bring a wrongful death action exists only when the decedent would have been able to maintain an action for damages "if death had not ensued." *Schoenrock.* That phrase is "descriptive of the nature of the wrong committed to determine if a cause of action exists as a matter of substantive law for the alleged wrongful conduct." *Frongillo,* 163 Ariz. at 370, 788 P.2d at 103. Plaintiffs bringing a wrongful death action are subject to the same defenses as could have been asserted against the decedent, had the decedent lived and brought an action for personal injury. *Gibson v. Boyle,* 139 Ariz. 512, 679 P.2d 535 (App.1983).

The right to bring a wrongful death action was created solely by statute. *Lueck v. Superior Court,* 105 Ariz. 583, 469 P.2d 68 (1970). In *Halenar v. Superior Court,* 109 Ariz. 27, 29, 504 P.2d 928, 930 (1972), our supreme court stated that the right to recover damages for wrongful death "is not placed beyond the power of the legislature to abrogate by § 6 of Article 18 of the Arizona Constitution" and "can be granted or withheld at the pleasure of the legislature." Although the Ninth Circuit Court of Appeals cast doubt on this holding in *Davis v. Dow Chemical Corp.,* 819 F.2d 231 (1987), relying on *Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984), it has not been overruled by our supreme court.[4] Indeed, in a post-*Ken-*

---

3. The issue of a family member's dependency and eligibility for death benefits does not arise unless the employee is deceased. A.R.S. § 23–1046, 23–1064; *see also Dunn.*

4. In *Summerfield v. Superior Court,* 144 Ariz. 467, 698 P.2d 712 (1985), the court discussed at length the basis for judicial application of common law to the interpretation of the wrongful death statutes. The court declined to decide whether wrongful death was a common law action, and concluded only that "common-law principle and policy must play a role in the interpretation of [the wrongful death] statute." 144 Ariz. at 473, 698 P.2d at 719.

*yon* decision, Division One of this court rejected a wrongful death plaintiff's constitutional challenge to A.R.S. § 12–611, finding that Art. 18, § 6 protects only common law actions. *Schoenrock; see also Hazine v. Montgomery Elevator Company*, 176 Ariz. 340, 861 P.2d 625 (1993) (Martone, J., dissenting); *cf. Hayes v. Continental Insurance Co.*, 178 Ariz. 264, 266 n. 1, 872 P.2d 668, 670 n. 1 (1994) (Article 18, § 6 "preserves the common-law right to recover damages").

With the foregoing in mind, we return to *Mariscal*'s holding that an employee's election of compensation under article 18, § 8, binds not only the employee's dependents, but the employee's nondependent parents as well. Contrary to the Diazes' assertions, the reasoning of *Mariscal* bears on their constitutional theories. In that case, the parents of a deceased worker killed on the job had brought an action against his employer pursuant to A.R.S. § 12–611, alleging loss of consortium. Our supreme court acknowledged their "original and distinct claim for damages," but noted the statutory requirement that the decedent would have had to be entitled to maintain the action "if death had not ensued" and pointed out that "[s]ection 12–611 must be read, however, in pari materia with [the Act's exclusivity provision]" insulating complying employers from liability. 113 Ariz. at 149, 548 P.2d at 413. The parents alternatively argued that their right of action was "bottomed on the Arizona Constitution, Article 18, § 7 [employer liability in hazardous occupations]," and therefore could not be abolished by the legislature. *Id.* The court rejected this argument, finding their constitutional claim nevertheless dependent upon whether the employee had elected "to settle for such compensation, or to retain the right to sue said *employer as provided by this Constitution." Id.*, quoting Ariz. Const. art. 18, § 8 (emphasis in original).

*Mariscal*'s holding is well grounded in the express requirements of Arizona's wrongful death statute. *See Conner* (wife barred from maintaining wrongful death action against deceased husband's employer where decedent could not have done so); *cf. Schoenrock* (survivors bound by decedent's settlement of claim prior to his death). *Mariscal* is also consistent with other jurisdictions which have upheld exclusive liability provisions banning suits by nondependents in the face of constitutional challenges. *See, e.g., Branch v. Aetna Casualty & Surety Co.*, 370 So.2d 1270, 1273 (La.App.1979) (rejecting parents' loss of consortium claim after declining to construe state constitutional provision protecting right to sue "so broadly as to defeat the sound policy implemented by [Louisiana's Workers' Compensation Act]."); *see also Larson* §§ 65.54, 66.23 and cases cited therein. Thus, the trial court's reliance on *Mariscal* was not misplaced. The Diazes' assertion that *Mariscal* is "clearly flawed" and their suggestion that we not follow it are more appropriately addressed to the supreme court. *See McKay v. Industrial Commission*, 103 Ariz. 191, 438 P.2d 757 (1968).

### b. Equal Protection

■ In a related argument, the Diazes contend that the Act's exclusivity provisions violate the equal protection clause of the Arizona constitution, article 2, § 13, because the legislature has defined dependents "in a manner that excludes some parents from receiving any benefits," and a cause of action for wrongful death, like a cause of action for physical injury, has been termed a fundamental right by Division One of this court in reviving a facially time-barred survivors' claim. *Anson v. American Motors Corp.*, 155 Ariz. 420, 747 P.2d 581 (App.1987). We need not dwell on this argument, however, because the right to sue for wrongful death is not absolute in the face of the workers' compensation scheme, as discussed above, nor is there any reason to accord it greater weight than the "constitutionally bottomed" right of action at issue in *Mariscal.* 113 Ariz. at 149, 548 P.2d at 413. Clearly, the exclusivity provisions of the Act are essential to further the state's compelling interest in the preservation and integrity of its workers' compensation system. As noted earlier, a cornerstone of that system is employers' assumption of liability without fault in exchange for immunity from lawsuits arising out of employment injuries. Furthermore, dependent and nondependent family members with loss of consortium claims are treated identically; neither can bring such a claim

against an employer when the employee has elected the Act's benefits. *See Mariscal; Mardian; Hills.* We therefore conclude the trial court properly granted summary judgment on appellants' constitutional claims.

### Exceptions to Exclusive Remedy Provisions . .

The Diazes alternatively contend that their wrongful death action was improperly precluded because underlying facts bring it within several of the Act's exceptions to its exclusivity provisions.

#### a. Willful misconduct by employer

 The exclusive remedy provisions of the Act do not apply when the injury is caused by the employer's willful misconduct, A.R.S. § 23–1022(A), defined as "an act done knowingly and purposely with the direct object of injuring another." § 23–1022(B). Even gross negligence or wantonness amounting to gross negligence does not constitute a "willful act" under this definition; the negligence or wantonness must be accompanied by the intent to inflict injury upon another. *Serna v. Statewide Contractors, Inc.,* 6 Ariz.App. 12, 429 P.2d 504 (1967).

The Diazes argue that Magma "deliberately and repeatedly chose to exclude outside emergency medical personnel who could have saved [Diaz's] life," pointing to deposition testimony of Magma dispatcher David Brown that he had repeatedly asked those at the accident site whether he should summon outside medical assistance, and the response was always "[n]ot at this time." The Diazes maintain that intent to injure can be inferred from this testimony and surrounding circumstances, and that the trial court should have permitted the trier of fact to make this determination.

Comparing Magma's conduct with the employer's conduct in *Serna,* we find as a matter of law that Magma's did not rise to the level of willful misconduct. In *Serna,* the employer was repeatedly warned by state safety inspectors that dangerous conditions existed on a construction job site, yet it

refused to comply with specific safety recommendations. As a direct result, a ditch caved in, causing the deaths of two workers. The court held that the employer's conduct did not constitute willful misconduct for purposes of the Act because the employer had not acted with deliberate intent and that such intent could not be inferred from gross negligence. 6 Ariz.App. at 16, 429 P.2d at 508. *See also Lowery v. Universal Match Corporation,* 6 Ariz.App. 98, 430 P.2d 444 (1967) (knowingly requiring employee to perform maintenance on equipment containing hazardous chemicals did not satisfy willful intent). Similarly, while there may be evidence here that Magma was negligent in ignoring safety hazards and delaying the entry of paramedics until Diaz had been extricated from the grizzly, there is no evidence that Magma's objective was to injure Diaz.[5]

 In a related argument, the Diazes contend the trial court erred in disregarding a comment allegedly made by mine manager Rick Seaney during the rescue attempt that it would be "cheaper to let [Diaz] die than to extricate him." Magma dispatcher Brown testified that he had told an assistant mine inspector he had received two anonymous phone calls several days after the accident asking if he had heard about the comment. The inspector testified Brown told him he had heard about it from an employee who was at the accident scene. The trial court refused to consider this evidence, finding it an "unsubstantiated rumor."

 The Diazes argue the alleged comment was admissible as a party admission, Rule 801(d)(2)(D), Ariz.R.Evid. 17A A.R.S., and therefore, first-hand knowledge and reliability were not required, citing *Shuck v. Texaco Refining & Marketing,* 178 Ariz. 295, 872 P.2d 1247 (App.1994) (admitting unidentified employee's statement to plaintiff). The proponent of a party admission must show that the statement was made by the opposing party's agent or servant, was made during the existence of the relationship, and concerned a matter within the scope of the

---

**5.** Following the accident, the United States Department of Labor, Mine Safety & Health Administration conducted an independent investigation and cited Magma for "low" negligence and violating a safety regulation.

employment. *Id.* While admissions are not hearsay, there is a hearsay issue here because, unlike *Shuck*, there is no evidence anyone actually heard Seaney make the statement. *See State v. McGann*, 132 Ariz. 296, 645 P.2d 811 (1982); Ariz.R.Evid. 805 (multiple hearsay not admissible unless each part meets hearsay exception). There are also no indicia of reliability. The statement, therefore, does not fall within any of the hearsay exceptions. Accordingly, the trial court did not abuse its discretion in refusing to consider it. Even if it had, we agree with Magma that the statement would not have affected the court's ruling, given its unreliability and the high threshold required to show willful intent.

### b. Dual capacity doctrine

■■■ The Diazes next argue that Magma acted in a second capacity beyond that of employer when it "chose to provide medical services through an untrained, unlicensed dispensary worker, and chose to deliberately deny outside, trained emergency medical technicians access to Diaz." Under the dual capacity doctrine,

> an employer who normally is shielded from tort liability by the exclusivity of workers' compensation may be held liable to an injured worker if the employer acted in a capacity which conferred on it obligations apart from those as an employer and the worker's injury arose out of this other assumed role.

*Dugan v. American Express Travel Related Services Co.*, 185 Ariz. 93, 101, 912 P.2d 1322, 1330 (App.1995).[6]

As Magma points out, both federal and state laws and regulations require it to provide first aid materials to all employees, arrange for emergency medical assistance and transportation for injured employees, and train its supervisors in first aid. *See* 30 C.F.R. §§ 56.15001, 56.18014, 57.15001, 57.18010, and 57.18014 (1996); A.R.S. §§ 27–304(A), (B) and 27–306(A); Ariz.Admin.Code

§§ R11–1–145 and R11–1–47. We see no error in the trial court's conclusion that Magma did not assume a role independent from that of employer during the rescue attempt but simply assumed obligations it already owed Diaz as his employer.

### c. Workers' compensation bad faith

■■■ In their final claim against Magma, the Diazes argue the trial court erred in rejecting their workers' compensation bad faith claim, contending a trier of fact could conclude that Magma had failed to fulfill its obligation under § 23–1062(A) "to provide whatever medical services Diaz reasonably needed while he was trapped in the muck." Section 23–1062(A) provides:

> Promptly, upon notice to the employer, every injured employee shall receive medical, surgical and hospital benefits or other treatment, nursing, medicine, surgical supplies, crutches and other apparatus, including artificial members, reasonably required at the time of injury, and during the period of disability . . . .

■■■ This section pertains to the provision of post-injury medical benefits, after the type and extent of the injury has been evaluated and the employee has notified the employer of necessary treatment. *See Lasiter v. Industrial Commission*, 173 Ariz. 56, 839 P.2d 1101 (1992) ("notice" requires employer be informed of employee's medical diagnosis and the course of treatment recommended by employee's doctor). It does not provide the basis for a bad faith claim here. The Diazes' reliance on *Hayes* is misplaced, both on its facts and its holding. That case involved a suit against a workers' compensation carrier for damages arising out of the carrier's unjustified denial of a claim for benefits and the question whether dismissal on jurisdictional grounds was appropriate. Here, contrary to the Diazes' suggestion, the trial court neither "preempted" nor "precluded" their claim, but simply found no evidence of willful misconduct and no other predicate for bad faith

---

**6.** Numerous Arizona cases have rejected the dual capacity doctrine, recognizing that it conflicts with the exclusivity provisions of § 23–1022(A) and undermines the legislature's purpose in enacting a system in which workers' compensation is customarily the only remedy for industrially injured workers. *See, e.g., Dugan; Swichtenberg v. Brimer*, 171 Ariz. 77, 828 P.2d 1218 (App. 1991); *Hills.*

besides the "adequacy of the rescue effort." We conclude that the trial court properly granted Magma's motion for summary judgment.

### d. Coworker malpractice

■ The Diazes argue that their claim against David Necochea, the Magma dispensary worker who administered first aid to Diaz at the accident site, was improperly dismissed because A.R.S. § 23–1022(C) exempts him from the Act's protection. That section provides that the Act's exclusive remedy provisions do not apply to an action for medical malpractice against an employee of a hospital operated by the employer pursuant to § 23–1070. Under this section, in lieu of making premium payments for medical, surgical, and hospital benefits, an employer may elect to provide such benefits by maintaining a hospital for its employees or by contracting with a physician for the hospital care of injured employees. The evidence shows that Magma's dispensary provides only limited basic first aid services. As a matter of law it is not a "hospital" as contemplated by § 23–1070. That being the case, Necochea's actions during the rescue were protected by the coworker immunity provided in § 23–1022(A), and the trial court's grant of summary judgment was correct.

### Governmental Immunity

■ The Diazes contend that the trial court erred in granting the State's motion for summary judgment, arguing that the state mine inspector is not immune from liability for injuries arising from negligent inspections and that there is evidence the required inspection at Diaz's work site was performed improperly. In granting the motion, the trial court concluded the State was absolutely immune from liability under A.R.S. § 12–820.01, citing *Bird v. State*, 170 Ariz. 20, 821 P.2d 287 (App.1991). The trial court also found it immaterial whether the inspections were substandard because "[t]he decisions concerning what and when to inspect made by the state and defendant Martin prior to the accident were clear policy decisions of a sort protected by the immunity statute."

■ Section 12–820.01(A) provides absolute immunity to public entities for the acts and omissions of their employees that constitute "[t]he exercise of an administrative function involving the determination of fundamental governmental policy." Subsection B of the statute states such acts include, but are not limited to:

1. A determination of whether to seek or whether to provide the resources necessary for:

(a) The purchase of equipment,

(b) The construction or maintenance of facilities,

(c) The hiring of personnel, or

(d) The provision of governmental services.

2. A determination of whether and how to spend existing resources, including those allocated for equipment, facilities and personnel.

3. The licensing and regulation of any profession or occupation.

As we stated in *Goss v. City of Globe*, 180 Ariz. 229, 232, 883 P.2d 466, 469 (App.1994), the immunity statute must be viewed as "carving out a narrow exception" to the common law rule that the government is liable for its tortious conduct.

### a. Regulation of Professions and Occupations

■ The State first argues that absolute immunity applies in this case because it involves the regulation of a profession or occupation, citing *Bird*. In that case, Division One of this court found the State immune from claims relating to the licensing and regulation of pest control operators. The court's holding, however, hinged on the licensing of structural pest control under Title 32 of the Arizona Revised Statutes, which provides for state licensing and regulation of numerous professions and occupations for the protection of the public. *See* A.R.S. §§ 32–101 through 32–3201. The operation of mines is governed by Chapter 3 of Title 27, which does not regulate or license mining as an occupation, but rather regulates the environment in which miners work. *See* A.R.S. §§ 27–301 through 27–469. *Cf. Fidelity Security Life Insurance Co. v. State*, 188

**554**

Ariz. 283, 287, 935 P.2d 861, 865 (App.1996) (Department of Insurance decision immune from liability because statutory licensing and regulation protects citizens of state and "require[s] attainment of minimum quality standards, training, and financial responsibility"). Thus, we cannot agree that § 12–820.01(B)(3) provides absolute immunity here.

### b. Determination of Governmental Policy

The State also argues that the inspection of mines is immune from liability because it involves "the determination of fundamental governmental policy." As noted by Division One of this court in *Evenstad v. State*, 178 Ariz. 578, 583, 875 P.2d 811, 816 (App.1993), the "ad hoc approach" adopted in *Ryan v. State*, 134 Ariz. 308, 310–11, 656 P.2d 597, 599–600 (1982),[7] is still used to evaluate whether an administrative function involves fundamental governmental policy. In explaining this approach, the *Evenstad* court stated:

> We note that courts have frequently distinguished the development of rules from the implementation of rules. *See Freeman v. State*, 705 P.2d 918, 920 (Alaska 1985) (applying a "planning/operational" test); *Little v. Utah State Div. of Family Servs.*, 667 P.2d 49, 52 (Utah 1983); *Petersen v. State*, 100 Wash.2d 421, 671 P.2d 230, 240–41 (1983); James L. Conlogue, Note, *A Separation of Powers Analysis of the Absolute Immunity of Public Entities*, 28 Ariz. L.Rev. 49, 57 & n. 64 (1986) ("implementation, as opposed to development of administrative rules and regulations does not involve the type of policy judgment requiring the protection of absolute immunity"). Although we do not adopt this criterion as a "bright-line test," we do find it useful in this case.

178 Ariz. at 583–84, 875 P.2d at 816–17 (footnote omitted). *See also Fidelity Security Life Insurance Co.*, 188 Ariz. at 286, 935 P.2d at 864 ("a finding of discretion, alone, is not sufficient to provide absolute immunity" under § 12–820.01); *Schabel v. Deer Valley Unified School Dist. No. 97*, 186 Ariz. 161, 920 P.2d 41 (App.1996) (distinguishing policy level decision to provide playground equip-

ment from operational level decision whether to eliminate safety hazard); *Warrington v. Tempe Elementary School District No. 3*, 187 Ariz. 249, 928 P.2d 673 (App.1996) (school district's placement of bus stop an operational decision not entitled to absolute immunity).

Thus, while certain decisions concerning what and when to inspect may be policy determinations of the sort protected by the immunity statute, the Diazes' claim does not involve those kinds of decisions. They essentially alleged that the state inspector negligently *implemented* those decisions by overlooking patent safety violations which caused Diaz's death, and presented evidence that the level where Diaz worked was inspected shortly before the accident and that proper inspection includes a review of all safety equipment, including safety lines. After the accident, a federal mine inspector discovered that Diaz's safety line was improperly installed in several respects, which caused the line to sag. The assistant state mine inspector testified he had inspected Diaz's level, but could not recall whether he had tested Diaz's line or checked its installation. Mining regulations require safety lines to prevent miners from falling into raises, and if safety equipment is not in compliance with the regulations, the inspector must give the mine written notice or a written exception to enforcement. Neither was issued here. These actions involve the implementation of administrative rules and regulations, not policy judgments shielded by absolute immunity. *See Schabel.*

Governmental immunity has long been the exception, not the rule, in Arizona. *Ryan*, 134 Ariz. at 309, 656 P.2d at 598, citing *Stone v. Arizona Highway Commission*, 93 Ariz. 384, 381 P.2d 107 (1963). Prior to the enactment of the article on Actions Against Public Entities or Employees, A.R.S. §§ 12–820 through 12–826, governmental entities were not immune from liability when personal injuries were caused by the entities' negligent inspections. *See Daggett v. County of Maricopa*, 160 Ariz. 80, 770 P.2d 384 (App.1989); *Brown v. Syson*, 135 Ariz. 567, 663 P.2d 251 (App.1983); *see also Bill Moore Motor Homes, Inc. v. State*, 129 Ariz. 189, 629 P.2d

---

**7.** *Ryan* overruled a long line of cases that had held an injured party could recover from a governmental tortfeasor only if the injured party was

owed a specific duty other than as a member of the public. 134 Ariz. at 310, 656 P.2d at 599.

1025 (App.1981) (applying public-private duty analysis). When enacting this legislation, the legislature expressed its purpose and intent, stating it is Arizona's public policy that public entities be liable for the acts and omissions of employees "in accordance with the statutes and common law of this state." 1984 Ariz.Sess.Laws, ch. 285, § 1. The legislature further directed that the statutes should be construed "with a view to carry out the above legislative purpose." *Id.* From this, we can infer that the legislature intended to codify the common law as it existed at that time; had it intended to grant immunity for negligent inspections, it could have so specified in § 12–820.01(B).

The State's reliance on *United States v. S.A. Empresa de Viacao Aerea Rio Grandense,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), is unavailing. There, the Supreme Court held that the United States is immune from liability for regulatory inspections and enforcement under the discretionary function exception of the Federal Tort Claims Act, 28 U.S.C. § 2680(a). Although that authority is persuasive, we do not follow it here because it conflicts with Arizona precedent rejecting governmental immunity when required inspections are alleged to have been negligently performed and a cause of personal injury. *Daggett; Brown; Bill Moore.* Accordingly, we conclude the trial court erred in granting summary judgment in favor of the State on the issue of whether it was immune from liability in inspecting the area where Leonardo Diaz was killed.

### Disposition

The summary judgment in favor of the State and Inspector Martin is reversed, and the matter is remanded for further proceedings consistent with this opinion. The trial court's grant of summary judgment in favor of Magma and Necochea is affirmed.

LANKFORD and JAMES D. HATHAWAY (retired), JJ., concur.

* McGregor, J., did not participate in the determination of this matter.