7 P.3d 107

**Jane DOE, on Behalf of and for the Benefit of John DOE, her minor child, Plaintiffs–Appellants,**

and

**Gilbert Unified School District, a governmental entity; Defendant–Appellant,**

v.

**The STATE of Arizona, a governmental entity, Defendant–Appellee.**

No. 1 CA–CV 99–0453.

Court of Appeals of Arizona, Division 1, department D.

June 8, 2000.

Review Granted Dec. 5, 2000.

application by a sexual offender who later molested her son.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On February 24, 1999, Doe filed a complaint against GUSD and the Arizona Department of Education ("ADOE"). The complaint alleged that Doe's fourteen-year-old son, John Doe, had been repeatedly molested by Kenneth R. Graham, a high school teacher employed by GUSD, that ADOE was negligent in its processing and approval of Graham's application for a teaching position, and that GUSD was negligent in failing to protect its student from a known sexual deviant.

¶3 After the trial court allowed Doe to amend her complaint to substitute the State for ADOE, it granted the State's motion to dismiss because of the absolute immunity afforded by A.R.S. § 12–820.01. Doe and GUSD each filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

Rhees, Hopkins & Kreamer by Michael L. Rhees, Joseph C. Kreamer, Kelly Brown, Phoenix, Attorneys for Plaintiff-Appellant.

Jones, Skelton & Hochuli by Georgia A. Staton, Eileen J. Dennis, Phoenix, Attorneys for Defendant–Appellant.

Janet Napolitano, The Attorney General by Richard F. Albrecht, Michael O'Toole, Assistant Attorneys General, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

WEISBERG, Judge.

¶1 Jane Doe and the Gilbert Unified School District ("GUSD") appeal the trial court's judgment in favor of the State of Arizona (the "State"). The trial court ruled, and we agree, that absolute immunity under Arizona Revised Statutes ("A.R.S.") section 12–820.01 (sometimes referred to herein as the "absolute immunity statute") barred Doe's claim against the State for its allegedly negligent approval of a teaching certificate

## DISCUSSION

■ ¶4 On appeal from a dismissal, "we assume as true the facts alleged in the complaint and will not affirm the dismissal unless satisfied as a matter of law that plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Fidelity Sec. Life Ins. Co. v. State Dept. of Ins.*, 191 Ariz. 222, 224, 954 P.2d 580, 582 (1998) (citing *Menendez v. Paddock Pool Constr. Co.*, 172 Ariz. 258, 261, 836 P.2d 968, 971 (1991)).

¶5 The absolute immunity statute provides, in relevant part:

A. A public entity shall not be liable for acts and omissions of its employees constituting:

. . . .

   2. The exercise of an administrative function involving the determination of fundamental governmental policy.

B. The determination of a fundamental governmental policy involves the exer-

cise of discretion and shall include, but is not limited to:

1. A determination of whether to seek or whether to provide the resources necessary for:

   (a) The purchase of equipment,

   (b) The construction or maintenance of facilities,

   (c) The hiring of personnel, or

   (d) The provision of governmental services.

2. A determination of whether and how to spend existing resources, including those allocated for equipment, facilities and personnel.

3. The licensing and regulation of any profession or occupation.

A.R.S. § 12–820.01 (1992).

¶ 6 In enacting this statute, the legislature declared as "the public policy of this state that public entities are liable for acts and omissions of employees in accordance with the statutes and [the] common law." Laws 1984, ch. 285, § 1A; *see also Fidelity*, 191 Ariz. at 224–25, 954 P.2d at 582–83. Accordingly, courts have held that "liability of public servants is the rule in Arizona and immunity is the exception." *Fidelity*, 191 Ariz. at 225, 954 P.2d at 583. We therefore narrowly construe immunity provisions applicable to government entities. *See id.* Although we are required to construe the statute narrowly to avoid providing immunity when the legislature did not intend to provide it, we may not abrogate the legislature's grant of immunity. *See Duke ex rel. Joy v. Cochise County*, 189 Ariz. 35, 41, 938 P.2d 84, 90 (1996) (unambiguous language of statute is determinative).

### A. Does A.R.S. Section 12–820.01(B)(3) Apply to Teachers?

¶ 7 Appellants argue that the absolute immunity statute does not apply to the certification of teachers.[1] Although they concede that teaching is an "occupation" within the common usage of the term, they contend that its common usage differs from

its statutory meaning. Appellants submit that the absolute immunity statute applies only to the "professions and occupations" identified in A.R.S. Title 32. Because teaching is not listed in Title 32, they conclude that it is not a profession or occupation shielded by the absolute immunity statute. The State responds that the statute expressly grants absolute immunity for its licensing of professions or occupations, that teaching is a profession or occupation, and that it is therefore entitled to immunity for the certification of teachers. We agree with the State.

¶ 8 When interpreting a statute, we first look to the language of the statute itself. *See Bird v. State through Corbin*, 170 Ariz. 20, 23, 821 P.2d 287, 290 (1991). Subsection (B)(3), by its terms, provides immunity for the State's licensing and regulation of "any" profession or occupation. It does not restrict its application to those professions and occupations listed in Title 32.

¶ 9 Appellants, however, argue that, because the *Bird* court relied on Title 32's regulation of structural pest control operators to conclude that the State was entitled to absolute immunity, it thereby limited the application of the statute to those professions or occupations so listed. *See id.* at 24, 821 P.2d at 291. Although Title 32 regulation was important to the court's determination that structural pest control operators constituted a profession or occupation, their regulation by Title 32, rather than by a non-Title 32 statute, was not dispositive. The court simply did not consider that question. *Bird*, therefore, is not on point.

¶ 10 Appellants' reliance on *Fidelity*, 191 Ariz. 222, 954 P.2d 580, also is misplaced. There, the supreme court held that the State was not entitled to absolute immunity for its negligent licensing of an insurance company's business in Arizona. The State had argued that its decision to grant or renew an insurance company's certificate of authority constituted the licensing or regulation of a profession or occupation. The court disagreed, stating:

---

1. Doe is the principal proponent of this argument, but GUSD joined Doe's argument below and alludes to it on appeal.

We think that argument constitutes an attenuated reading of the terms "profession" and "occupation." An insurance company ... is a commercial business enterprise within an industry subject to intense regulation. We can identify no legislative policy suggesting that an insurance underwriting enterprise should be treated as a "profession" or "occupation" under section 12–820.01(B). Indeed, the Arizona Professions and Occupations Code, A.R.S. §§ 32–101, et seq., which lists some thirty-seven recognized professions and occupations for purposes of regulation, makes no mention of the insurance industry.

191 Ariz. at 226, 954 P.2d at 584.

¶ 11 Appellants rely on the last sentence to bolster their argument that, unless an occupation or profession is listed in Title 32, it is not entitled to immunity under A.R.S. section 12–820.01(B)(3). But we find the first two sentences in the passage more indicative of the court's meaning. The court stated that an insurance company is "a commercial business enterprise" within a regulated industry, rather than a "profession" or "occupation." This comports with the common understanding of the terms "profession" and "occupation" as work in which a person, rather than a commercial enterprise, engages. *See Fidelity Sec. Life Ins. Co. v. State*, 188 Ariz. 283, 291 n. 4, 935 P.2d 861, 869 n. 4 (1996) (Fidel, J., dissenting) ("To act as an insurance *agent* is to engage in a profession or occupation. To act as an *insurance company* is not to engage in a profession or occupation but to engage in the 'transaction of insurance business.' "), *rev'd, and dissent cited with approval in, Fidelity,* 191 Ariz. at 226, 954 P.2d at 584. Accordingly, the court was merely referring to Title 32 as support for its conclusion that the licensing of an insurance company is not the equivalent of the licensing of an insurance agent. Like the *Bird* court, it simply did not consider whether activities not listed in Title 32 could be "professions" or "occupations" within the meaning of the statute.

■ ¶ 12 Considering that question now, we hold that, although the licensing of a profession or occupation listed in Title 32 presumptively falls within the scope of the absolute immunity statute, Title 32 does not provide an exhaustive list of those regulated professions or occupations for which the State's licensing decision is afforded absolute immunity. To illustrate, the State, through the supreme court and its committee on character and fitness, regulates lawyers. An attorney is clearly a professional, but Title 32 does not regulate attorneys. *See* Laws 1982, ch. 202, §§ 17, 25; ch. 310 § 36 (repealing A.R.S. § 32–201 *et seq.*); *see also Bridegroom v. State Bar,* 27 Ariz.App. 47, 49, 550 P.2d 1089, 1091 (1976) (supreme court has inherent power to regulate Arizona bar). Were we to accept appellants' argument, the State's licensing decision could subject it to suit whenever a lawyer commits malpractice. We do not believe that the legislature intended such a result.

¶ 13 Appellants nonetheless rely upon *Diaz v. Magma Copper Co.,* 190 Ariz. 544, 950 P.2d 1165 (1997), which we find to be inapposite. In *Diaz,* Division Two of this court held that the State was not entitled to absolute immunity from a suit alleging negligence in its inspection of a mine. The court reasoned that "[t]he operation of mines is governed by Chapter 3 of Title 27, which does not regulate or license mining as an occupation, but rather regulates the environment in which miners work." *Id.* at 553, 950 P.2d at 1174. In reasoning similar to that of the court in *Fidelity,* the court concluded that, because the statute at issue regulated the operation of mines and not the *occupation* of mining, the State was not entitled to absolute immunity for its issuance of the license.

¶ 14 But, unlike the mining operation provisions of Title 27, the Title 15 provisions are clearly intended to regulate the profession or occupation of teaching for the benefit and protection of the public. *See, e.g.,* A.R.S. §§ 15–533 (providing for reading, grammar and mathematics proficiency examination for teachers); 15–534 (providing for fingerprinting and certification regarding past criminal offenses and convictions); 15–537 (providing for evaluation of performance of certified teachers). Accordingly, we hold that teaching is a profession or occupation within the meaning of A.R.S. § 12–820.01.

## B. Does a "Ministerial Act" Exception Apply?

■ ¶ 15 GUSD also argues that the absolute immunity statute does not apply here because, regardless of whether teaching is a profession or occupation, the issuance of a teaching certificate is a ministerial act that does not involve a determination of fundamental public policy.[2] According to GUSD, the State's policy decision to require the licensing of teachers would be absolutely immunized, as would its adoption of appropriate rules and regulations for such certification. But, it reasons, the execution of those policy decisions would be entitled only to qualified immunity, not absolute immunity. *See* A.R.S. § 12–820.02(A)(5) (Supp.1999) (providing for qualified immunity for licensing conduct not entitled to absolute immunity under section 12–820.01). We disagree.

■ ¶ 16 The distinction between fundamental government policy and mere ministerial acts has been used when interpreting A.R.S. §§ 12–820.01(B)(1) and (2), both of which contain words of qualification. Subsection (B)(1) provides immunity for decisions regarding *"whether"* to seek or provide funds, while subsection (B)(2) provides immunity for decisions regarding *"whether"* to spend funds. Neither subsection has been interpreted to provide absolute immunity for state actions in implementing these initial decisions (i.e., regarding *how* to spend funds).[3] But subsection (B)(3) contains no such qualification. Instead, it unqualifiedly affords immunity for the "licensing and regulation" of professions and occupations. Its clear language indicates that while the public

policy/ministerial act dichotomy is important when analyzing subsections (B)(1) and (2), it is irrelevant when analyzing subsection (B)(3).

¶ 17 GUSD concedes that no court has yet applied the public policy/ministerial act dichotomy analysis to subsection (B)(3).[4] Nevertheless, it argues that the dichotomy ought to apply because the first sentence of A.R.S. § 12–820.01(B), which applies to all of its subsections, directs that the State is not liable for "the determination of fundamental governmental policy." A.R.S. § 12–820.01(A)(2). It infers, thereby, that each act relative to licensing must be scrutinized to determine whether it truly requires an exercise of discretion or whether it is merely ministerial.

¶ 18 But, in so arguing, it ignores not only that subsection (B)(3) has no qualification language, but that, when the statutory provisions are read together, the statute requires that "[t]he determination of a fundamental governmental policy ... *shall* include ... [t]he licensing and regulation of any profession or occupation." (Emphasis added.) Such plain language is not subject to analysis under the public policy/ministerial act dichotomy that GUSD suggests. *See Bird,* 170 Ariz. at 23, 821 P.2d at 290 ("The plain language of § 12–820.01(B)(3) indicates that the legislature intended that the licensing and regulation of any profession or occupation is by definition a determination of fundamental governmental policy that involves the exercise of discretion.").

¶ 19 GUSD also argues that, because courts presume that the legislature does not

---

**2.** The State disputes whether GUSD has standing as an aggrieved party to appeal and raise this issue. Additionally, the State asserts that GUSD has waived the issue on appeal by failing to raise it in the trial court.

In its response to Doe's brief, the State briefly addressed the issue raised by GUSD, conceding that Doe also raised the issue. Although the arguments set forth by Doe are less detailed than the arguments set forth by GUSD, we conclude that the issue itself was adequately raised in Doe's appeal. Therefore, because we must resolve the immunity issue even if GUSD's appeal were dismissed, we will consider GUSD's arguments. *See Resolution Trust Corp. v. City of Scottsdale,* 177 Ariz. 234, 237, 866 P.2d 902, 905 (1993) (appellate court has discretion to consider

arguments raised for first time on appeal, especially when arguments involve substantive legal issues not affected by questions of fact).

**3.** To illustrate, a local school board is absolutely immune from a lawsuit regarding its decision to construct a school playground. However, once the school board has decided to do so, it is not immune from a lawsuit for improperly installing or maintaining the playground. *See, e.g., Schabel v. Deer Valley Unified Sch. Dist. No. 97,* 186 Ariz. 161, 920 P.2d 41 (1996).

**4.** All of the public policy/ministerial act dichotomy cases cited by GUSD involve the interpretation of subsections B(1) and (2) and not (3).

enact superfluous statutes, *see Phoenix Newspapers v. Dep't of Corrections,* 188 Ariz. 237, 244, 934 P.2d 801, 808 (1997), the qualified immunity afforded by A.R.S. section 12–820.02(A)(5)[5] would become superfluous if the State's licensing of professions and occupations were afforded absolute immunity. But A.R.S. section 12–820.02(A)(5) retains its purpose under our reasoning because it continues to provide qualified immunity to the issuance of non-professional and non-occupational licenses. *See Bird,* 170 Ariz. at 23–24, 821 P.2d at 290–91 (noting that qualified immunity applies to other licenses not related to professions and occupations, such as sales tax and drivers' licenses).

¶ 20 Finally, the contrast between the types of activities controlled by subsections (B)(1) and (2) on one hand, and (B)(3) on the other, further supports the conclusion that subsection (B)(3) provides absolute immunity for the State's professional and occupational licensing. Unlike subsection (B)(3), the acts immunized by subsections (B)(1) and (2) include broad categories of activities. Those areas call for more limited immunity in order to implement the legislature's expressed intent of making liability the rule rather than the exception. *See Schabel,* 186 Ariz. at 165–66, 920 P.2d at 45–46 ("Were every governmental decision to allocate or expend funds protected by absolute immunity, immunity would be the rule and liability the exception. Such a state of affairs would contradict express legislative intent and our common law."). By contrast, the regulation and licensing of professions and occupations is a discrete, relatively small part of governmental activity. Providing absolute immunity for such an activity does not threaten to turn the rule of governmental liability into a rule of governmental immunity.[6] We, therefore, decline to regard teacher certification as a ministerial act subject to tort liability.

---

5. A.R.S. § 12–820.02(A)(5) provides qualified immunity for "[t]he issuance of or failure to revoke or suspend any permit, license, certificate, approval, order or similar authorization for which absolute immunity is not provided pursuant to § 12–820.01."

6. Moreover, the legislature could well have considered absolute immunity to be more appropri-

## CONCLUSION

¶ 21 For the foregoing reasons, we affirm the trial court's dismissal of Doe's complaint against the State.

CONCURRING: JEFFERSON L. LANKFORD, Presiding Judge, and CECIL B. PATTERSON, Jr., Judge.

ate when, as here, the State's conduct is so far-removed from the harm-causing event. As in many such situations, plaintiffs are not without recourse. They still may hold responsible both the party who directly inflicted their injuries and, if negligently responsible, the local governmental body that hired that party.