**Joseph OLSON, Monica Olson, Javier Vargas, Plaintiffs–Appellants,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 03–15141.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 2004.

Filed April 2, 2004.

Thomas G. Cotter & Traci L. Riccitello, Haralson, Miller, Pitt, Feldman & McAnally, P.L.C., Tucson, AZ, for the plaintiffs-appellants.

Peter D. Keisler, Assistant Attorney General, Civil Division, Washington, D.C., for the defendant-appellee.

Before B. FLETCHER, REINHARDT, Circuit Judges, and RESTANI,* Judge.

PER CURIAM.

Plaintiffs Joseph Olson, his wife Monica, and Javier Vargas appeal the district court's entry of final judgment on their Federal Tort Claims Act ("FTCA") claims pursuant to the government's motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

Joseph Olson and Vargas were permanently disabled when a nine-ton slab of earth fell from the ceiling of the mine where they were working. Plaintiffs sued the Mine Safety and Health Administration ("MSHA") alleging that the Agency was liable for the miners' injuries due to its negligence in carrying out or failing to carry out mandatory MSHA policies and procedures. Specifically, plaintiffs' claims for negligence arose from two main acts which they allege proximately caused their injuries: (1) MSHA Field Office Supervisor James Kirk's failure to evaluate six written and oral complaints he received regarding safety hazards at the mine; and (2) MSHA Inspector Alan Varland's failure to inspect the mine thoroughly and in its entirety.

The government moved to dismiss, and the district court granted the 12(b)(1) and (b)(6) motion on the grounds that the discretionary-function exception to the FTCA shielded the government from liability on plaintiffs' claims, and that no tort action was available for similar conduct under Arizona law. We disagree on both counts, and, accordingly, we reverse and remand.

I

The FTCA waives sovereign immunity for specified torts of federal employees, including negligent or wrongful acts or omissions "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, would be liable under the law of the state "where the act or omission occurred." 28 U.S.C. § 1346(b). A limitation on this waiver of sovereign immunity exists where the government is performing a "discretionary function," whether or not the discretion is abused. *Miller v. United States*, 163 F.3d 591, 593 (9th Cir.1998). However, the discretionary-function excep-

---

* The Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

tion covers acts which involve an element of choice; it does not apply where a "federal statute, regulation, or policy specifically prescribe[s] a course of action for an employee to follow," because "[i]n this event, the employee has no rightful option but to adhere to the directive." *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Further, the exception protects only government actions and decisions based on "social, economic, and political policy." *Id.* at 537, 108 S.Ct. 1954. The government bears the burden of establishing that the test is met and that discretionary immunity applies. *Miller,* 163 F.3d at 594.

Taking all of the allegations of the complaint as true, and construing these facts in the light most favorable to the nonmoving party, as we must when reviewing entry of final judgment on a 12(b)(1) and 12(b)(6) motion to dismiss, *see United States v. One 1997 Mercedes E420,* 175 F.3d 1129, 1131 n. 1 (9th Cir.1999), we hold that the government has failed to carry its burden here.

■ First, regarding Kirk's acts, the statute, 30 U.S.C. § 813(g), provides only that MSHA must respond with an "immediate inspection" when it receives safety hazard complaints that are "reduced to writing" and "signed by the representative of the miners or by the miner." However, although "many times, complaints concerning hazardous conditions do not meet the technical requirements" of 30 U.S.C. § 813(g), MSHA's General Inspection Procedures Handbook requires that "*all* complaints of alleged hazards ... must be evaluated." General Inspection Procedures Handbook (April 1989), at 27 (emphasis added). Similarly, MSHA's Program Policy Manual mandates that, "[i]n these situations, the inspector receiving the information *must evaluate* and determine a course of action." Program Policy Manual, vol. 3, pt. 43 (emphasis added).

The Agency's own March 2000 internal investigation specifically concluded that, despite these compulsory directives, Kirk failed to ensure that "*all* complaints" were handled in accordance with MSHA policy and procedures. Similarly, in its own subsequent report, the Office of Inspector General ("OIG") concluded that Kirk received valid complaints but did not "effectively evaluate" these complaints in determining a course of action. In fact, the OIG report relates that Kirk did not evaluate the anonymous complaints at all and that he dismissed them because he believed that anonymous complaints were not valid under 30 U.S.C. § 813(g). Because MSHA policies prescribe a course of action that Kirk failed to follow, we conclude that MSHA has not established that the discretionary-function exception covers Kirk's actions. *See Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954.

■ We also hold that the government has failed to show that Varland's inspections of the mine fell within the discretionary-function exception. MSHA is required to "make inspections of each underground coal or other mine *in its entirety* at least four times a year." 30 U.S.C. § 813(a) (emphasis added). The accident occurred in or near an area of the mine that had been barricaded earlier, only to be reopened for work shortly before the disaster. At least one complaint contained specific allegations that management had closed off certain areas prior to the inspectors' arrival "only for workers to again be sent back to those areas a few days later to work under poor conditions."

Although the OIG reported evidence that Varland entered the barricaded areas of the mine during his March 1999 inspection, the report also stated that, despite the allegations regarding such areas, they were *not* inspected during the subsequent April 1999, May 1999, and September 1999 inspections conducted by Varland (or dur-

ing the November 1999 inspection conducted by his successor). In short, the mine was not, as mandated by statute, inspected in its entirety. Thus, MSHA has not established that the discretionary-function exception covers Varland's actions.

In sum, the government has failed to establish that discretionary immunity applies with respect to either Kirk's or Varland's actions. *See Miller*, 163 F.3d at 594.

## II

Because the FTCA does not create liability, but merely waives sovereign immunity to the extent that state-law would impose liability on a "private individual in similar circumstances," 28 U.S.C. § 2674, we must also determine whether plaintiffs have pled facts sufficient to justify the imposition of liability under ordinary state-law principles.

■ Generally, the United States can be held liable under the FTCA only when liability would attach to a private actor under the law of the place where the tort occurred. *Delta Savings Bank v. United States*, 265 F.3d 1017, 1024(9th Cir.2001). However, the United States may be liable " 'for the performance of some activities that private persons do not perform,' . . . when a state or municipal entity would be held liable under the law where the activity occurred." *Concrete Tie of San Diego, Inc. v. Liberty Constr., Inc.*, 107 F.3d 1368, 1371 (9th Cir.1997) (quoting *Hines v. United States*, 60 F.3d 1442, 1448 (9th Cir. 1995)). In such instances, liability attaches if the United States breaches "a mandatory duty for which a cause of action lies." *Id.*

■ As a threshold matter, we hold that the district court correctly determined that there is no private-sector analogue for mine inspections because private parties "do not wield [regulatory] power," *Hines*, 60 F.3d at 1448, to conduct such "unique governmental functions." *Doggett v. United States*, 875 F.2d 684, 689 (9th Cir.1989). The question thus becomes whether, under Arizona law, state and municipal entities would be liable under like circumstances. The answer is yes. As the district court pointed out, a state governmental entity, including a state mine inspector, may be held liable under Arizona law for the failure to perform mandatory safety inspections. *See Diaz v. Magma Copper Co.*, 190 Ariz. 544, 554–55, 950 P.2d 1165 (App. 1997). In so holding, the *Diaz* court specifically rejected the state agency's argument that the state should be immune from liability in this context because mine inspections require the determination of government policy. The court explained that, under the Act granting absolute and qualified immunity for certain state actions, Actions Against Public Entities or Employees, Ariz.Rev.Stat. §§ 12–820–12–826, Arizona construes state immunity narrowly.[1]

---

1. The government argues that *Diaz* is no longer applicable because of a subsequent amendment that altered some of the wording of the Arizona statute granting state employees qualified immunity for certain conduct. We disagree. The amendment seems to have been undertaken to simplify the language of the provision and clarify the legislature's intent. At the time *Diaz* was decided, Arizona law provided qualified immunity, unless the public employee intended to cause injury or was grossly negligent, for the "failure to discover violations of any provision of law *requiring* inspections* of property other than property owned by the public entity in question." *See* Ariz.Rev.Stat. § 12–820.02(A)(6) (West 1998) (emphasis added to highlight amended text). In 1999, the provision was amended slightly to grant qualified immunity for "failure to discover violations of any provision of law *when inspections are done* of property other than property owned by the public entity in question." *See* Ariz.Rev.Stat. § 12–820.02(A)(6) (West 1999) (emphasis added). The government provides no argument why this non-substantive, clarifying amendment to

Because the plaintiffs allege facts showing that Kirk and Varland breached mandatory duties under the Federal Mine Safety and Health Act, 30 U.S.C. 801, et seq., the MSHA Handbook, and the Agency's Policy Manual, we conclude that, for purposes of 12(b)(6), they have stated a claim under state law principles.

### III

For the foregoing reasons, we RE-VERSE the district court's entry of final judgment in favor of the government, and REMAND for further proceedings in conformance with this opinion.

the qualified immunity statute would alter the *Diaz* court's analysis in any way, and accordingly, we conclude that *Diaz*'s reasoning and holding were unaffected by the amendment. Moreover, under the Arizona statute, immunity applies only when an inspection *is* conducted, but fails "to discover violations." Thus, the provision would *not* apply to plaintiffs' allegations that Kirk failed to evaluate safety complaints and that Varland failed to conduct required inspections *at all*. Finally, even if the statute were applicable, the governmental conduct at issue here might well constitute "gross negligence."